CARTEL CAPITAL CORPORATION ET AL., PLAINTIFFS, v. FIRECO OF NEW JERSEY, DEFENDANT-APPELLANT, AND ANSUL, INC., DEFENDANT-RESPONDENT.

COUNTRY BURGER OF RAMSEY, INC., PLAINTIFF-RESPONDENT AND CROSS-APPELLANT, v. FIRECO OF NEW JERSEY, DEFENDANT-APPELLANT, AND CROSS-RESPONDENT.

Argued on October 10, 1979—Decided January 23, 1980.

550

552

Mr. *Leonard J. Tafro*, argued the cause for appellant (*Messrs. Adams, Adubato, Tafro & Connelly*, attorneys).

Mr. *Raymond J. Fleming* argued the cause for cross-appellant (*Messrs. Feuerstein, Sachs & Maitlin*, attorneys).

Mr. *Victor C. Harwood, III* argued the cause for respondent (*Messrs. Harwood, Lloyd, Ryan, Coyle & Wulster*, attorneys).

The opinion of the court was delivered by

SCHREIBER, J.

Plaintiff, Country Burger of Ramsey, Inc. (Country Burger), sued Fireco of New Jersey (Fireco), the retailer, installer and servicer of plaintiff's fire extinguishing equipment, and Ansul, Inc. (Ansul), manufacturer of that equipment, for property damage caused by a fire during which the equipment allegedly failed to operate.[1] Plaintiff's cause of action against Ansul was based upon negligence and strict liability arising out of a design defect. The action against Fireco involved strict liability because of the same design defect and negligence in improperly servicing the system. The codefendants asserted cross-claims

---

[1]This action was consolidated with one brought by Cartel Capital Corp. and Evan Funding Corp., owner and lessor of the property. That complaint was subsequently dismissed and is not a subject of this appeal.

against each other under the Joint Tortfeasors Contribution Act, *N.J.S.A.* 2A:53A–1 *et seq.*, and for indemnification.

At the outset of the trial Ansul settled with plaintiff for $50,000, voluntarily dismissed its cross-claims and successfully moved for dismissal of Fireco's cross-claims. Plaintiff then proceeded against Fireco alone. In response to a set of special interrogatories, the jury found that Fireco was negligent, that Ansul had defectively designed the equipment, and that both the negligence and defect were proximate causes of plaintiff's damages. The jury determined that plaintiff had also been guilty of negligence. It fixed damages due to the malfunctioning of the fire extinguishing equipment to operate at $113,400 and the percentages of fault as follows: Plaintiff—41%, Fireco—30%, and Ansul—29%. The trial court then entered a judgment in favor of plaintiff for $34,020, plus interest and costs.

Fireco appealed, asserting that the trial court had incorrectly calculated the percentage of fault, and plaintiff cross-appealed, contending that the trial judge erred in reducing the judgment. The Appellate Division, relying upon *Cepeda v. Cumberland Engineering Co.*, 76 *N.J.* 152 (1978), held that the Comparative Negligence Act was not applicable to strict liability suits and reversed. 161 *N.J.Super.* 301 (1978). We granted Fireco's petition and plaintiff's cross-petition for certification. 78 *N.J.* 407 (1978).

The facts may be summarized as follows. Country Burger operated a fast food restaurant on Route 17 in Ramsey, New Jersey. At the time of the fire it was housed in a one-story brick structure of approximately 3,900 square feet consisting primarily of a dining area and a kitchen. A counter island in the kitchen contained two grills and four deep-fat fryers. Above the grill was an updraft hood through which an exhaust fan vented air to the outside.

Fireco was a recognized distributor of Ansul equipment. In 1967 Fireco sold and installed an Ansul fire extinguishing system in the restaurant. The system consisted of a tank, piping

and ejection nozzles located above and directed toward the grills and fryers. The tank, which was affixed to one side of the counter island, contained a chemical in powder form. A cannister, filled with pressurized liquid carbon dioxide was attached to the tank. When released the carbon dioxide acted as a propellant and forced the chemical through the piping and out the nozzles. The chemical mist would then settle on the area at which the nozzle was directed and suffocate any fire at that location. The heat of a fire would automatically activate the system by melting a link which would release a spring and in turn cause a hammer to break open a seal on the cannister. The equipment could also be activated manually by pulling down on a lever connected to the same hammer which would fracture the cannister seal.

Fireco twice extended the system when additional equipment was added in the restaurant. Following a fire in 1969, it had reset and recharged the Ansul mechanism. In August 1972, Kenneth Hakes, a Fireco serviceman, replaced a broken handle manually used to trigger the activation device. Fireco checked the system about once every six months. Its last inspection prior to the fire was around August 1973.

On November 30, 1973, at about 9:30 p. m. some paper plates which had been stacked on a shelf above the grill fell onto the grill and were ignited. No one was in the kitchen at the time. Two customers seated at the counter alerted the employees. John Foti, Jr., the cook, and David Mandara, the night manager, rushed in and Foti pushed the paper plates to the floor and stomped out the fire. However, grease on the grill and the wall behind the grill were aflame. Mandara used a steel brush to control the fire on the grill. Meanwhile the fire on the wall continued to spread. The air passage through the hood over the grill served as a draft and sucked the flames upward. The Ansul system was not operating and Michael Garamone, another employee, attempted without success to activate it manually by pushing the lever. Mandara and Foti then threw flour on the

spreading fire. This was ineffectual. The walls and roof were soon aflame and the building was abandoned when the fire department arrived. By the time the fire was brought under control, the building and its contents were substantially destroyed or damaged.

About a week after the fire, Edward Jacobs, an assistant manager at the restaurant, removed the Ansul tank and cannister from the wall. He noticed the tank was extremely heavy, removed the cap and saw that it was still filled with the chemical powder. On December 21, 1973, David C. Pool, a mechanical engineer, examined the tank, the bottle of carbon dioxide and the activating mechanism. He found that it was inoperable because a screw had been inserted into the handle of the lever from the wrong direction. This prevented the handle from rotating and releasing a coil spring which would have caused the release of the carbon dioxide. If the screw had been placed in the opposite side of the shaft, from right to left, the mechanism would have operated. Pool concluded that there was a design defect because the problem, the possibility of inserting the screw improperly, would have been eliminated if there had been an opening on only one side.

Fireco countered with the testimony of its president George Weise. He had been working with Ansul systems for ten years, and had attended Ansul's training school where he had been instructed in the use and operation of this particular Ansul unit. He said that the design was proper because a recess around the opening on one side of the shaft accommodated the head of the screw preventing it from protruding. He also testified that it was very difficult to insert the screw incorrectly, that is from left to right. Fireco also attempted to show that its serviceman Hakes, who had begun working for Fireco in July 1972, had attached the new handle properly. However, this was apparently the first occasion on which Hakes performed that assignment. He did not remember if the Ansul manual had instructions concerning a handle change and in any event he had not read any before his visit to Country Burger.

The major thrust of the defense was directed toward plaintiff's conduct. It attempted to show that plaintiff permitted grease to accumulate on the walls. The local board of health had cited plaintiff for a build-up of grease over the deep fry area in September 1973. However, upon reexamination two days before the fire, the health inspector found the premises to be in a "satisfactory" condition. Fireco also emphasized the allegedly careless conduct of plaintiff's employees in stacking the paper plates so near the grill and leaving the kitchen unattended. Lastly, Fireco's president had examined the Ansul equipment in January 1976, more than two years after the fire. He claimed that someone had tampered with the equipment, for he found that a seal on the carbon dioxide cannister had been broken and a seal on the tank had been replaced. Fireco implied that these conditions had existed before the date of the fire.

The special interrogatories and answers furnished by the jury were:

|  | YES | NO |
|---|---|---|
| 1. (a) Was defendant, Fireco of New Jersey, guilty of negligence? | X | |
| (b) Was that negligence, if any, a proximate cause of the incident? | X | |
| 2. (a) Was plaintiff, Country Burger of Ramsey, guilty of negligence? | X | |
| (b) Was that negligence, if any, a proximate cause of the incident? | | X |
| 3. Was the fire extinguisher equipment defectively designed by the defendant, Ansul Company?  If the answer to Question No. 3 is "NO" you need not answer Question No. 4. | X | |
| 4. Was the defect a proximate cause of the plaintiff's damages? | X | |

In completing Question No. 5 below, the jury is instructed that if the answer to Questions Nos. 1(a) or (b) is "NO", Fireco will be marked as being 0% at fault; if Question Nos. 2(a) or (b) is "NO", then Country Burger of Ramsey will be marked as being 0% at fault; if Questions Nos. 3 or 4 are "NO", then Ansul Co. will be marked as being 0% at fault.

5. Taking the combined fault of the defendants and plaintiff as a total of 100%, what percentage of that fault was attributable to:

|  |  |
|---|---|
| Ansul Co. | 29% |
| Fireco of N. J. | 30% |
| Country Burger | 41% |
| Total | 100% |

6. What sum of money would fairly, reasonably and adequately compensate Country Burger of Ramsey for its losses?

$ 113,400

When interrogatories 3 and 4 were being reviewed before submission to the jury, the trial court agreed that affirmative answers to those questions would also establish Fireco's responsibility on the theory of strict liability.[2] Fireco objected to the interrogatories on the ground that plaintiff had waived that theory of recovery. The objection was overruled and the jury was charged on the strict liability claim against Fireco.

The central legal issues are the effect to be given to plaintiff's settlement with defendant Ansul, the existence of plaintiff's negligence, and the propriety of dismissing Fireco's cross-claims for indemnification and contribution.

## I.

Defendants Ansul and Fireco argue that Country Burger's settlement with Ansul eliminated plaintiff's strict liability cause of action against Fireco, on the theory that the release of Ansul operated to remove any basis for the derivative claim against Fireco. Additionally, it is contended that Country Burger had, in fact, abandoned its strict product liability claim against Fireco. We find neither of these arguments persuasive.

■ Ansul contends that when it settled plaintiff's strict product liability claim, any cause of action predicated on that

---

[2] It would have been better practice to have also directed questions expressed in Fireco's name.

defect had been extinguished. However, a plaintiff may be entitled to and obtain several judgments against different persons for the same obligation or liability so long as there is only one satisfaction or recovery. In *Pennsylvania Greyhound Lines, Inc. v. Rosenthal*, 14 *N.J.* 372 (1954), we wrote:

> An unsatisfied judgment against one or more joint and several tortfeasors does not constitute a bar to actions against the remaining tortfeasors. The doctrine of election of remedies has no application. This principle has general acceptance. [*Id.* at 385; citations omitted]

■ Even when liability of one defendant is wholly vicarious, settlement with the primarily liable defendant may not necessarily release the other. For example, when an employer is liable for an employee's negligence, both the employer and employee are jointly and severally liable to the injured party until full satisfaction is received. *Moss v. Jones*, 93 *N.J.Super.* 179 (App.Div.1966), involved a plaintiff who had instituted two separate suits for personal injuries arising out of an automobile accident. In the first he had obtained a judgment against the driver-employee. The second suit against the employer was held maintainable. Because the previously obtained judgment remained unpaid, the plaintiff was entitled to pursue everyone who was liable for the harm until he obtained full satisfaction.

■ This rationale is also apposite when one joint tortfeasor has settled. Over 20 years ago Justice Jacobs in *Breen v. Peck*, 28 *N.J.* 351 (1958), discussed and rejected the common law doctrine that the release of one joint tortfeasor automatically released all. Instead the Court adopted the principle that the legal effect of a release on other parties should be determined by the intent of the parties to the release, with due consideration being given to whether the compensation paid was fully adequate. *Id.* at 367. That eminently more just rule has been consistently followed. See, *e. g., Daily v. Somberg*, 28 *N.J.* 372, 383 (1958); *McFadden v. Turner*, 159 *N.J.Super.* 360, 366 (App. Div.1978); *Rossum v. Jones*, 97 *N.J.Super.* 382, 390 (App.Div. 1967).

In *McFadden v. Turner, supra,* the Appellate Division considered an analogous situation wherein a hospital was sued for personal injuries arising out of the negligence of its employees. The plaintiff settled with the hospital for $9,500, the hospital's exposure being limited to $10,000. *N.J.S.A.* 2A:53A–8. Plaintiff's subsequent action against the employees was upheld. On behalf of the court, Judge Pressler wrote:

> The general rule in this jurisdiction is that a release of one tortfeasor will not release others who may also be liable to plaintiff for his harm unless the release is so intended or the plaintiff receives as a result thereof either full satisfaction or satisfaction intended as such. *Breen v. Peck,* 28 *N.J.* 351 (1958). While that departure from the common law was formulated in the context of multiple acts of negligence committed by concurrent tortfeasors, each of whom was himself actually rather than merely vicariously liable, we see no reason why the rule should not apply as well to the single act of negligence for which both the actual wrongdoer and his master or principal are each independently liable. The rationale of the rule is equally apposite whether the liability is actual or vicarious—namely, that plaintiff is entitled to pursue all those who are independently liable to him for his harm until one full satisfaction is obtained. [159 *N.J.Super.* at 366–367]

We agree with this analysis and note in passing that it accords with the view expressed in the *Restatement, Judgments* 2d § 95 at 80 (Tent. Draft No. 3, 1976); *Restatement, Judgments* 2d § 99 at 54 (Tent. Draft No. 4, 1977). Comment (a) to § 99 in Tentative Draft No. 4 contains the following pertinent language:

> Moreover, in some situations the person vicariously responsible may be held liable even though an action cannot be maintained against the active wrongdoer. This is the case when the active wrongdoer  .   .   .   has been given a release by the injured person that preserves the latter's rights against the person vicariously liable. [*Id.,* Comment (a) at 56–57]

See, *e. g., Ray Korte Chevrolet v. Simmons,* 117 *Ariz.* 202, 204–205, 571 *P.2d* 699, 701–702 (Ct.App.1977) (covenant not to sue servant did not bar claim against master); *Edgar Cty. Bank & Trust Co. v. Paris Hosp. Inc.,* 57 *Ill.2d* 298, 302, 312 *N.E.2d* 259, 261 (Sup.Ct.1974) (covenant not to sue servant did not bar claim against master); *Plath v. Justus,* 28 *N.Y.2d* 16, 319 *N.Y.S.2d* 433, 268 *N.E.2d* 117 (Ct.App.1971) (release of driver of car did not bar

claim against owner); *Diamond v. Davis Bakery, Inc.*, 8 *Ohio St.* 2d 38, 44, 222 *N.E.2d* 430, 434 (Sup.Ct.1966) (covenant not to sue manufacturer did not bar claim against retailer).

It follows that we must look to the parties' intention when the settlement was made. *Breen v. Peck*, 28 *N.J.* at 367. Before the jury was impanelled and sworn, Ansul announced that it had settled with plaintiff for $50,000; its total damage claim exceeded $180,000. Ansul's attorney stated that he would "be receiving settlement papers probably in the nature of a covenant not to sue" and "that the settlement with Ansul is not intended to release the other defendant, Fireco of New Jersey." The general release delivered conformed with that intent. Recited therein was the following:

> It is the intention of this Release to release Ansul, Inc., only, and this Release shall not affect in any way any and all claims the Releasor has against Fireco of New Jersey.

Further, plaintiff relinquished its claim against Ansul for only partial satisfaction of its alleged damages. The settlement was less than one-third the amount of damages claimed. The jury award of $113,400 confirmed that plaintiff's losses substantially exceeded the $50,000 settlement figure. Thus, plaintiff's action against Fireco, in which plaintiff sought damages based upon strict liability and negligence, remained viable. Release of Ansul as a primary tortfeasor did not release Fireco from either its vicarious or direct responsibility.

Ansul and Fireco also argue that aside from the release plaintiff had abandoned its theory of strict liability against Fireco. The record discloses otherwise. In the pretrial order plaintiff asserted that Fireco, "as the retailer and installer of the system, is also strictly liable to the plaintiffs." At the outset of the proceedings, during the argument of Ansul's motion for dismissal of Fireco's indemnity cross-claims, Fireco's attorney said that the only claim asserted against it "[a]ccording

to the pretrial" was based on the negligence of its serviceman. He was obviously mistaken. Although plaintiff's counsel did not actively participate in the argument between the codefendants, he pointed out at the time that negligence was not plaintiff's sole theory.

Furthermore, evidence supporting a strict liability theory was introduced against Fireco at trial without objection. Plaintiff's expert explained in detail his concept of the design defect and Fireco fully cross-examined him on this subject. Fireco also produced evidence from which an inference could be drawn that the design was proper. When the case was submitted to the jury, plaintiff's counsel insisted that two separate causes of action existed, one being negligence and the other strict liability. In view of all the foregoing we are satisfied that the question of Fireco's responsibility as the seller of defective equipment was properly submitted to the jury.

## II.

We pass next to the question of what legal effect, if any, should be given to plaintiff's conduct. Defendants have claimed that plaintiff's employees were careless in stacking the paper plates near an unattended hot grill and permitting grease to accumulate on the grill and the surrounding walls. They assert that this conduct constituted a contributory proximate cause of the fire as well as the resultant damages and therefore should bar or reduce plaintiff's recovery.

A serious question exists whether these factors could be deemed, as a matter of law, to be a proximate cause of the damage since the purpose of the Ansul equipment was to extinguish a fire on the grill irrespective of its origin. See *Bahlman v. Hudson Motor Car Co.*, 290 *Mich.* 683, 288 *N.W.* 309 (Sup.Ct.1939). Moreover, the type of conduct which will bar recovery in strict product liability has been sharply circumscribed. In such actions a defendant must show that the plain-

tiff with actual knowledge of the danger posed by the defective product voluntarily and unreasonably encountered that risk.[3] See discussion in *Cintrone v. Hertz Truck Leasing & Rental Service,* 45 *N.J.* 434 (1965); see also *Suter v. San Angelo Foundry & Machine Co.,* 81 *N.J.* 150, 158 (1979); *Cepeda v. Cumberland Engineering Co.,* 76 *N.J.* at 183–185; *Ettin v. Ava Truck Leasing, Inc.,* 53 *N.J.* 463 (1969). Applying this test, we find as a matter of law that there was not an unreasonable and voluntary exposure to a known risk. There was no evidence of plaintiff's voluntary exposure to a known danger. Plaintiff had no forewarning that the system whose purpose was to extinguish fires, irrespective of cause, would fail to function as a consequence of a design defect. Defendant did not meet its burden of proof.[4] Thus, though the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 *et seq.* may be applicable to strict liability causes, the Act is inapplicable when plaintiff's conduct does not constitute an unreasonable and voluntary exposure to a known risk. *Cf. Suter v. San Angelo Foundry & Machine Co.,* 81 *N.J.* at 164, which held that the Comparative Negligence Act had no effect because, under the circumstances, there was no contributory negligence in a strict liability case as a matter of law.

When there is evidential support, contributory negligence in its conventional sense may be properly considered by the jury if the plaintiff's cause of action is expressed in terms of negligence. When the plaintiff asserts strict liability and negligence against one or several defendants and both theories of recovery are submitted to the jury,[5] the trial court may be

---

[3]Under some circumstances we have held that even this type of conduct may not reduce the amount of or bar plaintiff's recovery. *Suter v. San Angelo Foundry & Machine Co.,* 81 *N.J.* 150 (1979); *Bexiga v. Havir Manufacturing Corp.,* 60 *N.J.* 402 (1972).

[4]We observe that neither defendants' pleading nor pretrial contentions included any factual contentions supporting this defense.

[5]Frequently, a charge on strict liability alone would be sufficient, since the plaintiff would have a lighter burden in that negligence need not be proven.

required, depending upon the evidence, to submit interrogatories covering both types of contributory negligence. If the determination is made that liability is predicated only upon defendant's negligence, then contributory negligence in its general meaning or conventional sense shall be applied. However, if the jury determines that a defendant's responsibility is based solely on strict liability, then only contributory negligence in the more limited sense may bar or mitigate damages in accordance with the Comparative Negligence Act.

■■■■■ Here, the jury found that the fire extinguisher equipment had been defectively designed by Ansul and that defect was a proximate cause of plaintiff's damages. Such findings by the jury support a judgment against Fireco based on strict liability. We perceive of no reason to disavow that verdict merely because the plaintiff was also found entitled to recover due to Fireco's negligence. Where a defendant is found liable on the theory of strict liability, plaintiff's entitlement to recovery should not be diminished or altered because defendant is also liable on another theory of wrongdoing. It was not incumbent upon the plaintiff under the circumstances here to elect the theory upon which he was seeking recovery before the matter was submitted to the jury. Under our rules, "a plaintiff . . . is not . . . required to elect his theory of recovery and thereby gamble on the outcome of the trial findings . . . [citations omitted]." *Shapiro v. Solomon*, 42 *N.J.Super.* 377, 386 (App.Div.1956). See *R.* 4:5–6. "No valid reason appears to require a plaintiff to elect whether to proceed on the theory of strict liability in tort or on the theory of negligence." *Jiminez v. Sears, Roebuck & Co.*, 4 *Cal.*3d 379, 387, 93 *Cal.Rptr.* 769, 774, 482 *P.*2d 681, 686 (Sup.Ct.1971). "When a jury verdict sustains

See *Masi v. R. A. Jones Co.*, 163 *N.J.Super.* 292 (App.Div.1978), holding that the trial judge did not err when he charged only the strict liability theory after concluding that, on the facts, the jury could not find negligence without finding strict liability.

several alternative theories of recovery advanced by a plaintiff, the trial court must [unless plaintiff chooses otherwise] render judgment on the theory which affords the greatest recovery." *Mowery v. Fantastic Homes, Inc.*, 568 *S.W.*2d 171, 173 (Tex.Civ. App.1978). Therefore, plaintiff's alleged contributory negligence is immaterial and cannot bar its right to recover the full amount of its damages on the strict liability claim which was submitted to the jury.

### III.

We turn next to Fireco's cross-claims for indemnity or contribution from Ansul as a joint tortfeasor. As we have seen Fireco was exposed to liability because it had distributed and sold a defective piece of fire extinguishing equipment. Since Ansul had manufactured and sold the apparatus to Fireco, Fireco had a viable cross-claim against Ansul for indemnity. As stated in *Newmark v. Gimbel's, Inc.*:

> Strict liability to the injured consumer does not leave the dealer without remedy. He has an action over against the manufacturer who should bear the primary responsibility for putting defective products in the stream of trade. Considering the overall problem of prosecuting products liability cases, it would seem to make sense procedurally to have the plaintiff's cause of action whenever possible adjudicated in one action against manufacturer and retailer. If the plaintiff sues the dealer alone, the dealer in his own interest should implead the manufacturer and thus avoid circuity of action. [54 *N.J.* 585, 600–601 (1969)]

Fireco had received no consideration for the dismissal of its cross-claim. Its exposure for damages attributable to Ansul's defectively designed equipment remained after Ansul's settlement with the plaintiff. Accordingly, Fireco's cross-claim for indemnity should not have been dismissed.

However, that error does not warrant reinstatement of the indemnity claim. The jury found that Fireco was negligent and its negligence was a contributing cause of the plaintiff's damage. Fireco has had its day in court on that issue. Having

been found responsible for its negligence, Fireco cannot now claim a right to indemnification.

It is settled that indemnity may not ordinarily be obtained by a party who has been at fault. The general rule is set forth in *Restatement, Restitution* § 96 at 418 (1937):

> A person who, *without personal fault,* has become subject to tort liability for the unauthorized and wrongful conduct of another, is entitled to indemnity from the other for expenditures properly made in the discharge of such liability. [emphasis supplied]

This principle has been accepted in New Jersey. See *Adler's Quality Bakery, Inc. v. Gaseteria,* 32 *N.J.* 55, 79–80 (1960); *Daily v. Somberg,* 28 *N.J.* at 385; *Schramm v. Arsenal Esso Station,* 124 *N.J.Super.* 135, 138 (App.Div.1973), aff'd o. b. 63 *N.J.* 593 (1973). It would be inequitable to permit an active wrongdoer in the absence of a contractual understanding between the parties to obtain indemnity from another wrongdoer and thus escape any responsibility. We see no reason not to follow the general rule.

Fireco's cross-claim also sought contribution under the Joint Tortfeasors Contribution Law, *N.J.S.A.* 2A:53A–1 *et seq.* That act established a right of contribution among joint tortfeasors, *N.J.S.A.* 2A:53A–2, when the "injury or damage is suffered by any person as a result of the wrongful act, neglect or default of joint tortfeasors . . . ." *N.J.S.A.* 2A:53A–3. When that has occurred a joint tortfeasor can recover contribution from another tortfeasor for any excess paid in satisfaction of a judgment "over his pro rata share . . . ." *N.J.S.A.* 2A:53A–3. That law applies here.

The statute defines "joint tortfeasors" to mean two or more persons jointly or severally "liable in tort for the same injury." *N.J.S.A.* 2A:53A–1. Ansul and Fireco satisfy that definition. Both were found to be at fault and liable in tort—Ansul because of its production and distribution of a defective product, *Suter v. San Angelo Foundry & Machine Co.,* 81 *N.J.* at 162, and Fireco

because of its negligent servicing and because of its role in the distributive chain of a defective product.

We have previously held that the Contribution Law does not require that joint tortfeasors be liable on the same theory of recovery, so that a defendant whose responsibility arises out of strict liability and another defendant whose responsibility is due to negligence may be joint tortfeasors under that law. *Adler's Quality Bakery, Inc. v. Gaseteria,* 32 *N.J.* 55 (1960). In that case, an aircraft owner, Gaseteria, was strictly liable pursuant to *N.J.S.A.* 6:2–7 for damages resulting from the crash of the plane after it had collided with an RKO television tower. Gaseteria cross-claimed for contribution from RKO. RKO claimed Gaseteria was not a joint tortfeasor. Justice Burling, writing for the Court, relied upon the generic language in the statute of a "wrongful act." He stated:

> The "wrongful act" required by the Joint Tortfeasors Contribution Law . . consists, in this case, of the infliction of injuries "caused by the ascent, descent or flight of the aircraft, or the dropping or falling of any object therefrom . . ." It is clear that the term "wrongful act" includes any action resulting in the imposition of absolute liability under *N.J.S.A.* 6:2–7. [32 *N.J.* at 75]

RKO also argued "that the Joint Tortfeasors Contribution Law requires that the party seeking contribution be liable for the same tort as the party from whom contribution is sought." *Ibid.* Justice Burling responded, "There is . . . no difficulty in allowing a party liable for negligence to be sued as a joint tortfeasor by a party absolutely liable, since the effect is the same as if both parties committed torts of an identical nature." *Id.* at 77.

We see no reason why the rationale of *Adler's Quality Bakery, Inc.* is not equally persuasive when a defendant manufacturer's defective product and a defendant seller's negligence in servicing that product proximately and concurrently cause the damages. The damages have resulted from the "wrongful act, neglect or default" of both. *N.J.S.A.* 2A:53A–3.

Although we have not passed upon the precise issue before, other jurisdictions have come to the same conclusion. Applying the Pennsylvania contribution law, which is comparable to ours, the Third Circuit held that a manufacturer, strictly liable for damages caused by a defective product, was entitled to seek contribution from a "negligent purchaser or user, employer or otherwise . . . ." *Chamberlain v. Carborundum Co.*, 485 *F.* 2d 31, 34 (3 Cir. 1973). The Supreme Court of California has held that a claim for contribution could be brought by a negligent supermarket against the manufacturer of a defective shopping cart liable to an injured customer on strict liability principles. *Safeway Stores, Inc. v. Nest-Kart*, 21 *Cal.*3d 322, 579 *P.*2d 441, 146 *Cal.Rptr.* 550 (Sup.Ct.1978). See also *Skinner v. Reed-Prentice Div. Package Machinery Co.*, 70 *Ill.*2d 1, 14, 15 *Ill.Dec.* 829, 835, 374 *N.E.*2d 437, 443 (Sup.Ct.1978), *cert.* den. 436 *U.S.* 946, 98 *S.Ct.* 2849, 56 *L.Ed.*2d 787 (1978); *Bristol-Myers Co. v. Gonzeles*, 548 *S.W.*2d 416, 428 (Tex.Civ.App.1976) (citing *Adler's Quality Bakery, Inc.*) rev'd on other grounds, 561 *S.W.*2d 801 (Tex.Sup.Ct.1978); *Gies v. Nissen Corp.*, 57 *Wis.*2d 371, 384, 204 *N.W.*2d 519, 526 (Sup.Ct.1973). *Cf. Tormo v. Yormark*, 398 *F.Supp.* 1159 (D.N.J.1975) (applying New Jersey law, the court held a bank, absolutely liable under statute, may seek contribution from a negligent attorney); *Howell v. Bennett Buick, Inc.*, 52 *A.D.*2d 590, 591, 382 *N.Y.S.*2d 338, 340 (App.Div.1976), app. den. 40 *N.Y.*2d 803, 387 *N.Y.S.*2d 1030, 356 *N.E.*2d 482 (Ct.App. 1976) (manufacturer, liable under warranty, may seek contribution from dealer who negligently repairs automobile). See also Jensvold, "A Modern Approach to Loss Allocation Among Tortfeasors in Products Liability Cases," 58 *Minn.L.Rev.* 723, 741 (1974).[6]

---

[6]Cases in which a joint tortfeasor was denied contribution from an employer of a workers' compensation claimant are distinguishable by reason of the immunity of the employer under the statutory scheme. See, *e. g.*, *Adler's*

■ As indicated previously a joint tortfeasor's recovery is limited under the Contribution Law to any excess paid over "his pro rata share." *N.J.S.A.* 2A:53A–3. In this respect it is important to note the effect on the Joint Tortfeasors Contribution Law of the Comparative Negligence Act, *N.J.S.A.* 2A:15–5.1 *et seq.* Under that act the percentage of each party's fault must be found and "[a]ny party who is so compelled to pay more than such party's percentage share may seek contribution from the other joint tortfeasors." *N.J.S.A.* 2A:15–5.3.[7] Thus the Legislature has seen fit to redefine the "pro rata" allocation to be a party's "percentage share" in the contribution scheme between and among joint tortfeasors. *Rogers v. Spady,* 147 *N.J.Super.* 274, 277 (App.Div.1977).

Under the joint tortfeasors law we had held that a settlement with a joint tortfeasor, even though for less than a pro rata share of the total claim, reduced the plaintiff's total claim against the nonsettling codefendant or codefendants by the pro rata share and thus barred contribution from the settling tortfeasor. *Theobald v. Angelos,* 44 *N.J.* 228 (1965); *Judson v. Peoples Bank & Trust Co.,* 17 *N.J.* 67 (1954), aff'd on reconsid. 25 *N.J.* 17, 34 (1957). Now the effect on the plaintiff of a joint tortfeasor's settlement will depend upon the percentage of fault found against him. When one defendant settles, the remaining codefendant or codefendants are chargeable with the total verdict less that attributable to the settling defendant's percentage share.

Other jurisdictions have reached similar results. See *Gomes v. Brodhurst,* 394 *F.*2d 465, 468 (3 Cir. 1968) (on rehearing) (apply-

---

*Quality Bakery, Inc. v. Gaseteria,* 32 *N.J.* at 75; *Arcell v. Ashland Chemical Co.,* 152 *N.J.Super.* 471, 483–484 (Law Div.1977); *Ruvolo v. U.S. Steel Corp.,* 139 *N.J.Super.* 578, 587 (Law Div.1976).

[7] We have previously held that the Comparative Negligence Act pertains to fault emanating from strict product liability. *Suter v. San Angelo Foundry & Machine Co.,* 81 *N.J.* at 162–163.

ing law of the Virgin Islands); *Bartels v. Williston*, 276 *N.W.*2d 113 (N.Dak.Sup.Ct.1979). *Cf. Frey v. Snelgrove, Minn.*, 269 *N.W.*2d 918 (Minn.Sup.Ct.1978) (involving a *"Pierringer*-type" release); *Pierringer v. Hoger*, 21 *Wis.*2d 182, 124 *N.W.*2d 106 (Sup.Ct.1963) (release of codefendant expressly states that non-settling tortfeasors would not be liable for that percentage of fault to be attributed to settling tortfeasor). Our holding also comports with Section 6 of the Uniform Comparative Fault Act (1977).

Applying the foregoing principles, we find that the total relevant fault is that of Ansul and Fireco, there being no contributory negligence as a matter of law. Ansul's 29% and Fireco's 30%, or 59%, constitute the total fault in the case. In a sense, the 59% is 100%. Thus, Fireco's responsibility is 30/59ths or 50.8% and Ansul's is 29/59ths or 49.2%. It follows that Fireco's proportionate share of the entire damages of $113,400 is $57,661.01 and Ansul's proportionate share is $55,738.99. Ansul, however, had settled its obligation to the plaintiff for $50,000. Fireco remains liable for its share, namely $57,661.01.

Accordingly, the cause is remanded to the trial court for entry of a judgment in favor of the plaintiff and against Fireco in the sum of $57,661.01 plus costs and interest.

*For. remandment*—Chief Justice WILENTZ and Justices SULLIVAN, PASHMAN, CLIFFORD, SCHREIBER, HANDLER and POLLOCK—7.

*Opposed*—None.