219 N.J. Super. 182 (1987)
530 A.2d 43
NEW MILFORD BOARD OF EDUCATION AND THE BOROUGH OF NEW MILFORD, PLAINTIFFS-APPELLANTS,
v.
AUGUST B. JULIANO, M.D.; ANGELO MININNI, M.D., AND ANGELO MININNI, M.D., P.A., DEFENDANTS-RESPONDENTS.
and
SOCIETY OF THE VALLEY HOSPITAL; ROBERT STAUB, M.D., JOHN V. REARDON, M.D., RADIOLOGY ASSOCIATES OF RIDGEWOOD, P.A. AND ALEXIS DOE (SAID NAME BEING FICTITIOUS), DEFENDANTS,
v.
MARY TARANTO, THIRD-PARTY DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued March 24, 1987.
Decided July 10, 1987.
*183 Before Judges O'BRIEN, SKILLMAN and LANDAU.
Kathryn N. Roettger argued the cause for appellants (Kenneth J. Fost, attorney; Kathryn N. Roettger, on the brief).
*184 Jeffrey S. Brown argued the cause for respondent August B. Juliano, M.D. (Shanley & Fisher, attorneys; Richard E. Brennan and Jeffrey S. Brown, on the brief).
Judith A. Wahrenberger filed a letter brief on behalf of respondent Angelo Mininni, M.D. (Connell, Foley & Geiser, attorneys).
The opinion of the court was delivered by SKILLMAN, J.A.D.
On August 1, 1979, Karen Taranto, then 13 years old, was injured when a volleyball stanchion fell on her left foot. Plaintiff Borough of New Milford was the sponsor of the recreational program in which Karen was participating and plaintiff New Milford Board of Education owned the volleyball stanchion. Karen was treated for her injury by defendant Dr. August B. Juliano, an orthopedist. She also saw defendant, Dr. Angelo Mininni, a general surgeon, for a consultation. Several months after the accident three toes on Karen's foot had to be amputated because of gangrene.
Karen's parents brought suit on her behalf against New Milford, the New Milford Board of Education and Jayfro Corporation, which was the manufacturer of the volleyball stanchion. No suit was brought on her behalf against Doctors Juliano and Mininni. The lawsuit was ultimately settled for $200,000, $25,000 of which was paid by New Milford, $41,334 by the Board of Education and the remainder by Jayfro.
This lawsuit was brought to obtain reimbursement for the portion of the money paid to Karen which plaintiffs contend is attributable to medical malpractice in her care and treatment.[1] More specifically, plaintiffs allege that the amputation of Karen's *185 toes would not have been required if she had been properly treated.
Summary judgment motions filed by defendants Juliano and Mininni were granted. The trial court rejected plaintiffs' claim based on a theory of contribution because any malpractice committed by defendant doctors would make them "successive" rather than "joint" tortfeasors and hence the parties could not be found to be "jointly or severally liable in tort for the same injury." N.J.S.A. 2A:53A-1. The trial court rejected plaintiffs' claim based on a theory of indemnification because plaintiffs were not "free from fault," which the trial court held to be a precondition for securing indemnification.
We agree with the trial court's conclusion that plaintiffs are not entitled to seek contribution from defendant doctors because the right of contribution is purely statutory. The defendant doctors could only be held liable for the aggravation of Karen's injuries caused by their malpractice and not for the injuries initially caused by the fall of the volleyball stanchion. Hence, defendant doctors could not be liable for "the same injury to person" as plaintiffs and there is no right to contribution under N.J.S.A. 2A:53A-1. See also N.J.S.A. 2A:15-5.3, which provides for contribution only among "joint tortfeasors"; cf. Cartel Capital Corp. v. Fireco of New Jersey, 81 N.J. 548, 566-570 (1980). However, we conclude that plaintiffs should have a right to seek indemnification from defendants for any additional damage to Karen which was proximately caused by defendants' medical malpractice. Accordingly, we reverse.
A right of indemnity may be created either by contract or by the courts as an equitable remedy. See Prosser & Keeton on Torts (5th ed. 1984) § 51. It is the latter form of indemnity which is involved in this case. Such indemnity is allowed "... to prevent a result which is regarded as unjust or unsatisfactory." Ibid. at 341. This form of indemnity "... has been recognized in cases where equities supported it. A court's view of the equities may have been based on the relation of the *186 parties to one another, and the consequent duty owed; or it may be because of a significant difference in the kind or quality of their conduct." Ibid. at 344.
The New Jersey cases applying these principles have involved claims between joint tortfeasors. In that context our courts have held that a tortfeasor must have been without fault and his liability must be merely constructive, secondary or vicarious in order to make a claim for indemnification. Cartel Capital Corp. v. Fireco of New Jersey, supra, 81 N.J. at 566; Adler's Quality Bakery, Inc. v. Gaseteria, Inc., 32 N.J. 55, 79-80 (1960); Daily v. Somberg, 28 N.J. 372, 385 (1958). Where a tortfeasor secures indemnification from another jointly liable tortfeasor, the result is that the indemnitor becomes liable for the full damages of the injured party. Cartel Capital Corp. v. Fireco of New Jersey, supra, 81 N.J. at 566. Consequently, in the case of joint tortfeasors, "[i]t would be inequitable to permit an active wrongdoer in the absence of a contractual understanding between the parties to obtain indemnity from another wrongdoer and thus escape any responsibility." Ibid.
No New Jersey case has decided a claim of indemnity between successive tortfeasors, although the issue was noted in Daily v. Somberg, supra, 28 N.J. at 386 and Lawlor v. Cloverleaf Memorial Park, 106 N.J. Super. 374, 390 (App.Div. 1969), rev'd on unrelated grounds, 56 N.J. 326 (1970). This appeal requires us to determine the validity of such a claim.
A claim for indemnity by initial tortfeasors, such as plaintiffs, against successive tortfeasors, such as defendant doctors, is fundamentally different from a claim for indemnity by one joint tortfeasor against another. Plaintiffs do not seek to escape responsibility for their tortious conduct by holding defendant doctors liable for all damages incurred by Karen. Rather, plaintiffs' claim is limited to the difference between what Karen's damages would have been if defendants had not committed malpractice and the full amount of damages which *187 she suffered as a result of both the original accident and the subsequent malpractice. It is clear that a tortfeasor is responsible for all damages that naturally and proximately flow from the initial tort, including the consequences of medical malpractice in treating the injuries caused by his wrong. Ciluffo v. Middlesex Gen'l Hospital, 146 N.J. Super. 476, 482 (App.Div. 1977); Knutsen v. Brown, 96 N.J. Super. 229, 235 (App.Div. 1967). However, in our view, the responsibility of an initial tortfeasor for the additional harm caused by subsequent medical malpractice is less immediate and less direct than the responsibility of the party or parties who have actually committed the malpractice. Indeed, the initial tortfeasor's responsibility for that additional harm can be viewed as a form of constructive or secondary liability. Cf. Adler's Quality Bakery, Inc. v. Gaseteria, Inc., supra, 32 N.J. at 79-80. Consequently, we conclude that justice requires recognition of plaintiffs' right to seek indemnification against defendant doctors.
Our conclusion is supported by nearly all the decisions in other jurisdictions which have considered the right of an initial tortfeasor to seek reimbursement from a subsequent tortfeasor. See, e.g., Penn Tanker Co. v. United States, 409 F.2d 514 (5th Cir.1969); Herrero v. Atkinson, 227 Cal. App.2d 69, 38 Cal. Rptr. 490 (1964); Underwriters at Lloyds v. City of Lauderdale Lakes, 382 So.2d 702 (Fla. 1980); Gertz v. Campbell, 55 Ill.2d 84, 302 N.E.2d 40 (1973); Hunt v. Ernzen, 252 N.W.2d 445 (Iowa 1977); Musco v. Conte, 22 A.D.2d 121, 254 N.Y.S.2d 589, 592-594 (1964); Travelers Indemnity Co. v. Trowbridge, 41 Ohio St.2d 11, 321 N.E.2d 787 (1975); Radford-Shelton-Associates Dental Lab., Inc. v. St. Francis Hosp., Inc., 569 P.2d 506 (Okl.Ct.App. 1976); see also 4 Restatement, Torts, 2d, § 886B, Comment k. Contra Transcon Lines v. Barnes, 17 Ariz. App. 428, 498 P.2d 502 (1972). See generally, Annot., "Right of Tortfeasor Initially Causing Injury to Recover Indemnity or Contribution from Medical Attendant Causing New Injury or Aggravating Injury in Course of Treatment," 8 A.L.R.3rd 639 (1966).
*188 The court in Herrero v. Atkinson, supra, properly identified the equitable considerations which require recognition of a right of indemnity under the circumstances of this case:
The duty to indemnify may arise, and indemnity may be allowed in those fact situations where in equity and good conscience the burden of the judgment should be shifted from the shoulders of the person seeking indemnity to the one from whom indemnity is sought. The right depends upon the principle that everyone is responsible for the consequences of his own wrong, and if others have been compelled to pay damages which ought to have been paid by the wrongdoer, they may recover from him.
* * * * * * * *
Although the original negligence of Herrero may be regarded in law as a proximate cause of the damages flowing from the subsequent malpractice of the cross-defendants, and the plaintiff may recover a joint and several judgment against all who are found liable, there is no reason why the ultimate burden of damages should not be distributed among the various defendants, and each be made to bear that portion of the judgment which in equity and good conscience should be borne by him.... [Herrero] has had no control or direction over the conduct of the cross-defendants and not the slightest opportunity to protect himself against their negligence, yet he is made liable in law for any damages caused by them. Under such circumstances it is equitable and just that indemnity be allowed Herrero, and that the cross-defendant doctors and hospital bear that portion of the damages caused by their own negligent conduct. [38 Cal. Rptr. at 493-494].
Finally, we reject the defendants' argument that plaintiffs are precluded from seeking indemnification because the suit on behalf of Karen was settled rather than being fully litigated. There is strong public policy favoring the settlement of litigation. See Judson v. Peoples Bank & Trust Co., 25 N.J. 17, 35 (1957); Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App.Div. 1974). It would be inconsistent with this public policy to deny plaintiffs an opportunity to seek indemnification from defendants simply because there was a settlement of the underlying suit.[2]See Young v. Steinberg, 53 N.J. 252 (1969).
*189 Accordingly, the summary judgment in favor of Juliano and Mininni is reversed and the matter remanded to the trial court for further proceedings in conformity with this opinion.
NOTES
[1] The defendants initially included a number of other parties involved in one way or another in Karen's treatment or care, who were dismissed by consent or on motion. At this stage the suit is being pursued only against Drs. Juliano and Mininni.
[2] Different issues would be presented if there was evidence that plaintiffs' settlement with Karen excluded the consequences of defendants' alleged malpractice or that there was an actual or potential claim by Karen directly against defendants. See Daily v. Somberg, supra, 28 N.J. at 386. If there is such a claim in this case, it may be raised upon remand. We also note that plaintiffs will be required upon remand to prove not only that defendants committed malpractice but also the quantum of damages which may be reasonably imposed upon defendants. The damages part of the case will involve both the reasonableness of the amount paid in settlement and the extent to which Karen's injuries were increased by defendant's malpractice. See Young v. Steinberg, supra.