**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1217-19T3

KATHRYN NIKIRK,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

CONDUCTV BRANDS and
ONTEL PRODUCTS
CORPORATION,

      Defendants-Respondents/
      Cross-Appellants,

_____

> Argued November 18, 2020 – Decided February 4, 2021
>
> Before Judges Whipple, Rose and Firko.
>
> On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-3059-18.
>
> Thomas N. Sweeney argued the cause for appellant/cross-respondent (Messa & Associates, PC, attorneys; Thomas N. Sweeney, on the briefs).
>
> Diane Fleming Averell argued the cause for respondent/cross-appellant, ConducTV Brands (Porzio, Bromberg & Newman, PC, attorneys; Diane Fleming

Averell, of counsel and on the briefs; Rahil Darbar, on the briefs).

Catherine G. Bryan argued the cause for respondent/cross-appellant, Ontel Products Corporation (Connell Foley, LLP, attorneys; Catherine G. Bryan, of counsel and on the briefs; Joseph C. Megariotis, on the briefs).

PER CURIAM

Plaintiff Kathryn Nikirk appeals from a July 12, 2019, order dismissing her complaint with prejudice for failure to join a party without whom the action cannot proceed, and a November 21, 2019, order denying her motion for reconsideration. Defendants ConducTV Brands (ConducTV) and Ontel Products Corporation (Ontel) cross-appeal the portion of the July 12, 2019, and November 21, 2019, orders which did not dismiss the complaint under the doctrine of forum non conveniens. We affirm the order dismissing plaintiff's complaint and denial of reconsideration. Accordingly, we need not reach the cross-appeals.

On May 2, 2016, plaintiff, then a resident of Hawaii, was using the Iron Gym Xtreme Total Upper Body Workout Bar (Iron Gym)[1] at her friend Felepe

---

[1] Plaintiff describes the Iron Gym as a multi-function exercise bar that can be used for pull-ups, chin-ups, push-ups, sit-ups, dips, arm, and shoulder exercises that can be attached and removed from a door with no drilling or tools required and is marketed to support up to 300 pounds.

Barrios's home, in Hawaii, when the product became unlodged from the doorway causing plaintiff to fall. She suffered injuries including an impact fracture of her cervical spine. Plaintiff was treated at two Hawaiian hospitals, and later underwent spinal fusion surgery in Indiana. She was not able to work and alleged ongoing pain along with severe psychological and psychiatric injuries from the incident.

Plaintiff filed her complaint in New Jersey against Ontel and ConducTV. Both companies are headquartered and have their principal places of business in New Jersey and both sell Iron Gym products. Plaintiff asserted four counts against defendants: (1) strict liability under the New Jersey Products Liability Act (NJPLA), N.J.S.A. 2A:58C-1 to -11, for defective product; (2) strict liability under the NJPLA for manufacturing defect; (3) strict liability under the NJPLA for failure to warn; and (4) breach of warranty.

Plaintiff did not purchase the Iron Gym, but asserts she was a foreseeable user. She also alleges the Iron Gym did not contain warnings or instructions to inform foreseeable users of its propensity to fall or slip off doorways during ordinary use. She further asserts the product did not contain information regarding dangers of catastrophic injury resulting from the equipment falling off doorways from normal, routine and foreseeable use. But because she was not

3

the owner of the product, she did not receive any literature that was provided with it. And at some point during her case, plaintiff moved to Virginia.

Ontel began distributing and selling Iron Gym products in 2008 and purchased all its Iron Gyms from Xiamen Evere Sports Goods Co. Ltd., which designed, manufactured, assembled, and packaged the Iron Gyms at its China location. Ontel advertises the Iron Gyms and sells them to 194 retailers both itself and through its distributor World Pack USA. The retailers then sell the Iron Gyms to third-party consumers. Iron Gyms are installed, serviced and otherwise maintained by the owner: the third-party end user.

ConducTV sold 161 Iron Gyms directly from its New Jersey headquarters between October 1, 2015, and February 8, 2019, which it bought from Ontel. ConducTV denies selling an Iron Gym to plaintiff, Barrios, or any other customer in the state of Hawaii. ConducTV also asserts that based on photos provided by plaintiff, the Iron Gym depicted would have included the written materials provided by the manufacturer, and ConducTV denies repairing, altering or otherwise changing the design or specifications of the Iron Gyms sold and shipped from New Jersey.

In lieu of filing an answer, Ontel moved to dismiss plaintiff's complaint pursuant to the doctrine of forum non conveniens and Rule 4:6-2(f) for failure

to join an indispensable party, which the court denied without prejudice and with instructions to complete limited discovery to determine whether defendant had any basis to renew its application. Plaintiff's answers to Ontel's interrogatories revealed the incident occurred at Barrios's residence in Hawaii. Plaintiff obtained the Iron Gym at issue from Barrios and sent it to counsel, asserting it was in the same condition as the date of plaintiff's injuries, and claiming she used the product in accordance with the manufacturer's labeling, instructions and warnings.

The Iron Gym was inspected by Ontel's product manager Scott Barlettano, who submitted an affidavit stating, based on his inspection, the Iron Gym had gone through "numerous alterations." These changes included a crossbar that was assembled upside-down, a broken plastic connector securing the two steel crossbars in the middle of the Iron Gym with two-thirds of it missing, several bolts missing and numerous other faults.

Ontel filed its answer asserting affirmative defenses, including a claim the Iron Gym was altered and assembled improperly after leaving Ontel's control. Ontel cross-claimed for contribution under the New Jersey Joint Tortfeasors Act, N.J.S.A. 2A:53A-1 to -48, and the New Jersey Comparative Negligence Act, N.J.S.A. 2A:15-5.1 to -5.8. ConducTV filed its answer on January 2, 2019,

also asserting affirmative defenses. In April 2019, Ontel again moved to dismiss plaintiff's complaint pursuant to the doctrine of forum non conveniens and Rule 4:6-2(f) for failure to join an indispensable party. ConducTV joined Ontel's motion.

In his July 12, 2019 decision granting the motion, the trial judge noted the current discovery end date was October 24, 2019, and no arbitration or trial date had yet been scheduled. He found plaintiff was a resident of Hawaii at the time of the incident but had since moved and plaintiff was not a New Jersey domiciliary or legal resident. The judge noted defendant's previous motion to dismiss was denied simply to "complete 'some discovery' prior to renewing the motion," which Ontel did, by having its product manager inspect the Iron Gym at issue "within weeks" of the order on August 24, 2018. This led to Ontel's assertion that numerous alterations were made, including evidence of improper assembly and maintenance. The judge also noted plaintiff did not disclose the location of the accident or identify Barrios as the owner of the residence where the incident occurred until May 21, 2019.

Ultimately, the judge agreed any negligence claim against Barrios was related to the matter and must be adjudicated together under Kent Motor Cars, Inc. v. Reynolds & Reynolds Co., 207 N.J. 428, 443 (2011), and the Comparative

Negligence Act, N.J.S.A. 2A:15-5.2(a), requiring the trier of fact to determine the comparative fault of each defending party in all negligence actions in which liability is disputed. Without considering Barrios as a party, defendants may be held liable for more than their percentage of fault.

The judge granted Ontel's motion to dismiss "subject to filing a new complaint in the more appropriate forum pursuant to . . . Rule 4:6-2(f)," but "reject[ed] defendant's motion to the extent it seeks dismissal as to forum non conveniens."

The judge found dismissal proper under Rule 4:6-2(f) because defendant was incapable of adding Barrios, an indispensable party. Barrios's alleged actions arose from the same transaction or occurrence, and defendants should be permitted to bring whatever third-party claims for relief as were appropriate in the same action as plaintiff's claim for relief against defendants.

The judge considered four factors under Rule 4:28-1(b), noting (i) rendering judgment without Barrios prejudices defendant because defendant is precluded from asserting claims or crossclaims; (ii) the prejudice cannot be mitigated by the court, as it had no jurisdiction over Barrios, and defendant would have to pursue a subsequent action in Hawaii relating to the same claims; therefore the principle of judicial economy would not be well-served when all

7

facts could be resolved at a single time and all assessment of liability could be made simultaneously; (iii) a judgment rendered in Barrios's absence would be inadequate as defendants may be held liable for Barrios's misconduct or negligence; and (iv) plaintiff is not without recourse merely because the court here dismissed the case, as she could file and prosecute her action in Hawaii, or any other appropriate forum to join Barrios. Therefore, the judge dismissed plaintiff's complaint for failure to join an indispensable party.

Plaintiff moved for reconsideration asserting a previously undiscussed arbitration clause governed any dispute between defendant ConducTV and Barrios. The phantom arbitration clause was not supported by any of ConducTV's literature, plaintiff did not produce any such document during discovery, and she did not purchase the Iron Gym at issue.

The judge denied plaintiff's motion for reconsideration, refusing to expand the record and reargue a motion under Capital Financial Company of Delaware Valley, Inc. v. Asterbadi, finding that plaintiff was attempting to revive a motion that was already litigated. 398 N.J. Super. 299, 310 (App. Div. 2008). The judge did, however, take the opportunity to expand on his previously stated reasons for the earlier ruling. As to the four factors a court is to consider under Rule 4:28-1(b) where joinder of a person is not feasible and the absent person is

indispensable, the court first explained how at least one, and likely both, defendants will suffer clear prejudice. Neither would be able to add Barrios to the case on a third-party basis for acts he may have committed, which might have caused or contributed to plaintiff's injuries. The judge found this "weigh[ed] heavily in favor of dismissal."

Second, the judge found prejudice could not be avoided by any procedural device, in that two parties would face liability for a claim that may involve a third-party who could never have his conduct considered by a New Jersey jury. Further, obtaining relief against him at a later point might prove elusive or impossible and would involve a second action when a single suit could resolve the case in its entirety, which weighs in favor of dismissal.

Third, the judge found Barrios's role as an owner of the Iron Gym and as a participant in the event, giving rise to the injury, was "no doubt central to the story of this case" and it seems "categorically inadequate to proceed in the absence of the product owner." This also weighed in favor of dismissal.

Finally, the trial judge found an adequate remedy existed for plaintiff if the action was dismissed. No argument was made that defendants were out of the jurisdictional reach of Hawaii, where Barrios was subject to process, and it

9

was neither clear nor relevant why plaintiff did not choose to prosecute the case in Hawaii. The judge found this final factor to favor dismissal or be neutral.

The heavy weight of factor one favoring dismissal, and the prejudice to the current parties in the absence of Barrios, combined with factors two and three, which also weighed in favor of dismissal, without more, was sufficient to defeat plaintiff's motion. The judge stated "[i]ntegrity of the ultimate judgment and the need to avoid prejudice to all, despite that proceeding here and now is favorable and non-prejudicial to one, outweighs plaintiff's desire to have her case heard in New Jersey." This appeal followed.

We review a trial court's decision to grant a motion to dismiss de novo, owing no deference to the trial court's conclusions. Flinn v. Amboy Nat. Bank, 436 N.J. Super. 274, 287 (App. Div. 2014). The appeal of the order denying plaintiff's motion for reconsideration was not briefed, so it is deemed waived. Pressler & Verniero, Current N.J. Court Rules, cmt. 5 on R. 2:6-2 (2021).

Plaintiff argues that if the NJPLA precludes contributory negligence, a comparatively negligent product purchaser cannot be indispensable in a strict liability case. As such, the trial judge erred because a consumer cannot be an indispensable party when his potential negligence cannot reduce a manufacturer's strict liability. Plaintiff also contends the trial judge erred by

injecting prohibited negligence concepts in a strict liability case governed by the NJPLA. We disagree.

With the 1987 passage of the NJPLA, there came to be one unified, statutorily defined theory of recovery for harm caused by a product, which is "for the most part, identical to strict liability as defined by Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150 (1979)." Dreier, Karg, Keefe & Katz, Current N.J. Products Liability & Toxic Torts Law, § 1:2-1 (2020). The NJPLA "melded elements of all previous theories of recovery into one" and established causes of action for manufacturing defect, design defect and warning defect, which are the "same causes of action which had been developed under the common law." Dreier, Karg, Keefe & Katz, § 2:1.

To succeed in making a prima facie case of products liability, the plaintiff must show "(1) the product design was defective; (2) the defect existed when the product was distributed by and under control of the defendant; and (3) the defect caused injury to a reasonably foreseeable user." Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 394 (1982). N.J.S.A. 2A:58C-1(b)(3) was interpreted by Tirrell v. Navistar Intern., Inc., 248 N.J. Super. 390, 398 (App. Div. 1991), to mean that negligence and other common law claims, other than for breach of express warranties, are subsumed within the NJPLA, but

"[n]evertheless, harm arising from allegedly negligent <u>conduct</u> can give rise to negligence actions despite the presence of products and related 'harm' as defined by the [NJPLA]." Dreier, Karg, Keefe & Katz, §1:2-2.

As a "fundamental prerequisite," plaintiff must prove causation, both but-for and proximate, in a strict-liability action. <u>Coffman v. Keene Corp.</u>, 133 N.J. 581, 594 (1992). The plaintiff need not prove the defect was the sole cause of her injury; the manufacturer or seller will be liable if the defect was a concurrent or substantial contributing cause. <u>Ibid.</u> (citing <u>Perez v. Wyeth Labs, Inc.</u>, 161 N.J. 1, 26-27 (1999)). Further, "[c]ontribution law does not by its terms require that tortfeasors be liable on the same theory of recovery" to be considered joint tortfeasors. <u>Cartel Capital Corp. v. Fireco of N.J.</u>, 81 N.J. 548, 567-68 (1980). Therefore, a defendant "whose responsibility is due to negligence and another whose responsibility arises out of strict liability may be joint tortfeasors for purposes of that law." <u>Ibid.</u> The pro rata share of damages of each tortfeasor is calculated pursuant to the Comparative Negligence Act. <u>See</u> N.J.S.A. 2A:15-5.2. Therefore, a negligence claim against Barrios, as the installer and potential modifier of the product, is not precluded by the NJPLA and may be brought in tandem with the strict liability claims brought against defendants.

Here, a judgment in Barrios's absence may prejudice defendants Ontel and ConducTV, insofar as they would be precluded from asserting claims or cross-claims against Barrios, arguing his installation or modification of the Iron Gym was the cause or a contributing cause of plaintiff's injuries. Even if defendants were able to depose him, they would not be permitted to add him to the case where the questions of liability and damages were to be disposed. The trial judge found this futility to weigh heavily in favor of dismissal. And although defendants would be permitted to assert an "empty chair" defense against Barrios, see Brodsky v. Grinnell Haulers, Inc., 181 N.J. 102, 114, 116 (2004); Fabian v. Minster-Mach. Co., Inc., 258 N.J. Super. 261, 276-77 (App. Div. 1992), it may be difficult for them to obtain evidence of the specifications of Barrios's door jamb, and obtain his testimony, since there is no evidence Barrios is subject to New Jersey court jurisdiction. Such circumstances would certainly be unduly prejudicial.

We agree that the prejudice could not be lessened or avoided by court order, because there is no indication in the record that the New Jersey court has jurisdiction over Barrios. Accordingly, defendants would be forced to pursue the same claims in Hawaii, if that were even possible, which would not serve the principle of judicial economy when all facts could be resolved, and liability

assessed, at a single time. Further, a different jury and potentially different law may lead to inconsistent and irreconcilable judgments.

Moreover, the judgment may not be adequate because the jury would not have the opportunity to consider Barrios's fault, whether total or contributing. Thus, Ontel and ConducTV may be held liable for Barrios's actions as a result, and nothing precludes plaintiff from filing and prosecuting her claim in a court where Barrios is subject to jurisdiction.

Therefore, considering the factors under Rule 4:28-1(b), we agree that Barrios is an indispensable party to this action, and because he cannot be joined, it was appropriate to dismiss the matter under Rule 4:6-2(f), failure to join a party without whom the action cannot proceed, as provided by Rule 4:28-1.

We reject plaintiff's additional arguments concerning the NJPLA and whether the Comparative Negligence Act has no effect, because there could be no contributory negligence in a strict liability case as a matter of law, under Suter, 81 N.J. at 164, and Cartel Capital, 81 N.J. at 563. Notably, Suter and Cartel do not eliminate comparative negligence in all products liability matters, but rather eliminate it as to the plaintiff where the plaintiff encounters the risk as part of his workplace activities, and limit the plaintiff's own comparative negligence in products liability claims outside of the workplace to those

instances where the plaintiff's conduct was an unreasonable and voluntary exposure to a known risk. Suter, 81 N.J. at 164, 167-68; Cartel, 81 N.J. at 562-63.

The NJPLA, N.J.S.A. 2A:58C-1 to -11, was enacted in 1987 to limit the liability of manufacturers by establishing "clear rules with respect to certain matters . . . including certain principles under which liability is imposed and the standards and procedures for the award of punitive damages." Kendall v. Hoffman-La Roche, Inc., 209 N.J. 173, 194 (2012) (quoting N.J.S.A. 2A:58C–1(a)). However, as stated in N.J.S.A. 2A:58C-1(a), the NJPLA was not intended to codify all issues relating to product liability, "and basic common law principles of negligence and strict liability remain intact, except to the extent that the [NJPLA] sets new limits on liability and punitive damages." Kendall, 209 N.J. at 194.

"The focus in a strict liability case is on the product itself," and "[a] prerequisite of any recovery under strict tort liability is the existence of a defective condition." Zaza v. Marquess & Nell, Inc., 144 N.J. 34, 48-49 (1996). "An inference of defectiveness may not be drawn from the mere fact that someone was injured. Liability should be imposed only when the manufacturer [or seller] is responsible for the defective condition." Id. at 49. Strict liability

requires a plaintiff to prove a defect in the product, which distinguishes strict liability from absolute liability and prevents a party sued under a products liability claim from becoming an "insurer" of the product. Ibid. (quoting O'Brien v. Muskin Corp., 94 N.J. 169, 179-80 (1983)).

Even if defendants were to employ an "empty chair" defense, if Barrios's negligence was found to be the sole cause of plaintiff's injuries, it could preclude complete relief to plaintiff. And any liability assigned to Barrios would not necessarily be recoverable, as there is no evidence Barrios is subject to a New Jersey's jurisdiction. See Brodsky, 181 N.J. at 114, 116. The installation and modification of the Iron Gym is central to causation, so adjudicating the case in New Jersey would require adjudging Barrios's negligence, or lack of negligence, in his absence.

Plaintiff's remaining arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1217-19T3