Jerry A. LOCKHART et al., Plaintiffs,

v.

HEEDE INTERNATIONAL, INC., et al., Defendants and Third-Party Plaintiff,

v.

TENNESSEE VALLEY AUTHORITY et al., Third-Party Defendants, and the following Companion Cases,

Lowell Lockhart et al., William Roy Parker et al., Kenneth Willis et al., Connie V. Barley et al., Carlos Troy Williams and Judith Anne Hammontree et al.

Nos. Civ-1-77-78 to Civ-1-77-81 and Civ-1-77-83, Civ-1-77-143 and Civ-1-77-169.

United States District Court, E. D. Tennessee, S. D.

Nov. 21, 1977.

Berke, Berke & Berke, Chattanooga, Tenn., for plaintiffs.

Noone, Stringer, Powers & Schulman, Chattanooga, Tenn., for Heede International, Inc.

Thomas, Leitner, Mann, Warner & Owens, Chattanooga, Tenn., for Black-Clawson Co., Inc.

Herbert S. Sanger, Jr., General Counsel; Charles A. Wagner III, Associate General Counsel; and M. Elizabeth Culbreth, Knoxville, Tenn., for Tennessee Valley Authority.

## MEMORANDUM

### FRANK W. WILSON, Chief Judge.

These lawsuits involve actions for personal injury or wrongful death brought by employees of the Tennessee Valley Authority (hereinafter TVA) or their survivors. The lawsuits all arise out of an accident which occurred when portions of a tower crane collapsed at TVA's Widows Creek Steam Plant near Bridgeport, Alabama, thereby injuring or killing several TVA employees who were on the crane. The main actions are brought against Heede International, Inc. (hereinafter Heede), who allegedly manufactured and sold the subject tower crane, and Black-Clawson Company (hereinafter Black-Clawson), who allegedly performed the welding and prefabrication of portions of the crane. Heede has filed third-party actions in each case against Black-Clawson and TVA for contribution or indemnity. These cases are presently before the Court upon a motion filed in each case by the third-party defendant TVA to dismiss the third-party complaint for failure to state a claim.

Essentially, the third-party complaint seeks indemnity from TVA for any amounts recovered by the original plaintiffs against Heede. Before considering the several theories advanced by Heede in support of its contention that it would be entitled to indemnity from TVA, it is appropriate to note the general rules that would ordinarily bar such a third-party action against TVA. ▌ It is undisputed that TVA is an agency and instrumentality of the United States and that the benefits of the Federal Employee's Compensation Act (FECA) extend to employees of TVA. *See* 16 U.S.C.

§ 831b (Supp. V 1975); *McBride v. Tennessee Valley Authority,* 395 F.Supp. 1181 (E.D.Tenn.1974), *aff'd* 513 F.2d 632 (6th Cir. 1975). Furthermore, Heede has conceded in its third-party complaint that TVA "has made, or should have made, Federal Employee's Compensation Act benefit payments to all of the plaintiffs in the above-captioned lawsuits", and that FECA, 5 U.S.C. § 8116(c), provides "the exclusive remedy by the plaintiffs against . . . Tennessee Valley Authority". In this regard it is noted that 5 U.S.C. § 8116(c) provides as follows:

> "The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute."

Not only does 5 U.S.C. § 8116(c) provide the exclusive remedy for the plaintiffs against TVA, but also it appears that absent a contract of indemnity, the exclusive remedy provision of FECA bars a third-party action for contribution or indemnity against TVA by a party sued for injuries or death by an FECA beneficiary. *Kudelka v. American Hoist & Derrick Co.,* 541 F.2d 651 (7th Cir. 1976); *Galimi v. Jetco, Inc.,* 514 F.2d 949 (2d Cir. 1975); *Newport Air Park, Inc. v. United States,* 419 F.2d 342 (1st Cir. 1969); *United Air Lines, Inc. v. Wiener,* 335 F.2d 379 (9th Cir. 1964), *cert. dismissed,* 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964); *Sheridan v. DiGiorgio,* 372 F.Supp. 1373 (E.D.N.Y.1974), *aff'd,* 505 F.2d 727 (2d Cir. 1974); *contra, Wallenius Bremen G. m. b. H. v. United States,* 409 F.2d 994 (4th Cir. 1969). The rationale for this rule was stated in *Sheridan v. DiGiorgio, supra,* quoting

in part from *Busey v. Washington*, 225 F.Supp. 416 (D.D.C.1964):

" '[T]he purpose of Workmen's Compensation Statutes such as the one herein involved is not only to provide for employees "a remedy which is both expeditious and independent of proof of fault, *but also for employers a liability which is limited and determinate.*" To permit contribution against the United States would not be in keeping with this purpose, inasmuch as the liability of the employer, the United States in this case, would cease to be limited and determinate.' " *Id.* at 423, of 225 F.Supp. (Emphasis in original).

"A third-party action cannot be used as a vehicle to circumvent the statutory intent of limiting the Government's liability to the amount scheduled under FECA. If the rule were otherwise, the Government's immunity would be illusory, evaporating the instant that another wrongdoer could be found and brought in as a defendant. Thus, the United States would be forced to pay an amount in excess of its statutory obligation to the injured employee, albeit indirectly through a third-party plaintiff." 372 F.Supp. at 1376.

From a reading of Heede's briefs in opposition to TVA's motion to dismiss, it does not appear that Heede takes issue with any of the general principles of law heretofore stated. Rather, Heede relies upon three theories in support of its contention that the exclusive remedy provision of FECA, 5 U.S.C. § 8116(c), would not bar its third-party action against TVA. These three theories are (1) that TVA impliedly agreed to indemnify Heede for the damages incurred by TVA's employees in these actions; (2) that TVA, through conduct of its General Counsel, waived TVA's indemnity from suit; and (3) that TVA is a necessary and indispensable party in these actions. Each of these theories will be considered separately. The first theory to be considered is Heede's claim that TVA impliedly agreed to indemnify Heede.

According to the allegations contained in the third-party complaint, as amended, Heede and TVA entered into a contract on July 15, 1970, whereby the tower crane which is the subject matter of this lawsuit was sold to TVA. The contract included an express provision which provides as follows:

"*Services of Contractor's Engineers and/or Mechanics.* The Contractor shall, if required, furnish at such times and for such periods as specified by TVA, one or more competent erecting and/or start-up engineers as needed in connection with installation and/or start-up and initial operation (including testing required in conjunction therewith) of the equipment furnished under this contract and/or one or more mechanics to assist the Contractor's engineer(s) or to perform installation work requiring special skills. The Contractor's engineer shall furnish instructions on behalf of the Contractor as to proper methods and procedures on all technical phases of installation work as well as start-up and initial operation (including testing required in conjunction therewith) of the equipment; shall inspect and indicate approval or disapproval of each phase of the work as it progresses; and upon completion of the installation work shall make a final inspection thereof and indicate his approval or disapproval. The Contractor's engineer shall also advise TVA engineers, when requested, as to the proper sequence of the work or on other matters relating thereto, *but the direct responsibility for planning, supervising, and executing the work shall remain in TVA.*" (Emphasis added)

In the original complaints the plaintiffs have alleged, among other things, that the crane accident was proximately caused by the negligence of Heede's engineer who was allegedly in control of the crane at the time a portion of the crane collapsed. Heede argues, however, that since TVA retained the "direct responsibility for planning, supervising and executing the work" it impliedly agreed to indemnify Heede for that portion of the judgment which might be attributable to TVA's negligence in plan-

ning, supervising and executing the work regarding the set up and operation of the crane. Heede's implied indemnity theory, sometimes referred to as an "implied warranty" claim, rests upon an application of the doctrine stated in *Ryan Stevedoring Company v. Pan-Atlantic S. S. Corporation,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).

In *Ryan* a stevedoring company had agreed to perform all of the shipowner's stevedoring operations at the time and place certain cargo was being loaded. During the subsequent unloading of the cargo an employee of the stevedore company was injured due to the improper storage of the cargo by the stevedoring company. The employee sued the shipowner, who sought indemnity against the stevedoring company. The stevedoring company argued that the exclusive liability provision of the Longshoremen's and Harbor Worker's Compensation Act, 33 U.S.C. § 905, which is similar to the exclusive liability provision of the FECA, 5 U.S.C. § 8116,[1] barred the shipowner's action for indemnity against it. The Supreme Court disagreed. The Court reasoned that the stevedoring company, in agreeing to perform services for the shipowner, impliedly agreed to indemnify the shipowner for damages incurred by the stevedore company's employee. The Court viewed the stevedoring company's contract to provide services as including an implied promise or warranty to perform the work in a reasonably safe manner. In the Court's words:

> "The shipowner here holds petitioner's uncontroverted agreement to perform all of the shipowner's stevedoring operations at the time and place where the cargo in question was loaded. That agreement necessarily includes petitioner's obligation not only to stow the pulp rolls, but to stow them properly and safely. Competency and safety of stowage are inescapable elements of the service undertaken. This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual ·relationship. It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product. The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of petitioner's stevedoring service." 350 U.S. at 133–34, 76 S.Ct. at 237, 100 L.Ed. at 141–42.

The Court went on to say that this implied warranty of workmanlike service was violated and this violation was the cause of the employee's injury and the shipowner's liability to the employee. Therefore, the Court found that the stevedoring company was liable for indemnification to the shipowner for the judgment recovered by the employee against the shipowner. Notably,

---

1. The similarity between the exclusive liability provision of the FECA, 5 U.S.C. § 8116, and the exclusive liability provision of the Longshoremen's and Harbor Worker's Compensation Act, 33 U.S.C. § 905, can readily be seen when one compares § 8116 of the FECA, heretofore quoted above, with § 905 of the Longshoremen's and Harbor Worker's Compensation Act as § 905 existed at the time *Ryan* was decided. At that time § 905 provided as follows:

   "The liability of an employer prescribed in section 905 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under this chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, nor that the employee assumed the risk of his employment, nor that the injury was due to the contributory negligence of the employee."

   Subsequently, on October 27, 1972, § 905 of the Longshoremen's Act was amended. *See* 33 U.S.C.A. § 905 (Supp.1977).

the holding prompted a vigorous dissent by four members of the Court.[2]

In the instant case Heede argues, in effect, that TVA gave to Heede an implied warranty of workmanlike service when TVA stated in the sales contract for the crane that "the direct responsibility for planning, supervising and executing the work shall remain in TVA." While at first glance it may appear that Heede's argument has some merit, an examination of cases subsequent to *Ryan* indicate that the holding in *Ryan* has been limited for the most part to admiralty situations. *See Liberty Mutual Insurance Company v. Fruehauf Corporation,* 472 F.2d 69 (6th Cir. 1972); *Smith Petroleum Service, Inc. v. Monsanto Chemical Company,* 420 F.2d 1103 (5th Cir. 1970); *Schwartz v. Compagnie General Transatlantique,* 405 F.2d 270 (2d Cir. 1968). The most significant decision in this regard is the Sixth Circuit's opinion in *Liberty Mutual Insurance Company v. Fruehauf Corporation, supra,* wherein the Court refused to extend the indemnification doctrine of *Ryan* to a non-admiralty tort. The Court noted that while the Supreme Court in *Ryan* did not expressly state the reason for the implication of the warranty by the stevedoring company, subsequent Supreme Court decisions have indicated that the basis of this implied warranty was the heavy burden that the admiralty doctrine of seaworthiness places on the shipowner. The admiralty doctrine of seaworthiness holds a shipowner absolutely liable for injuries to seamen who are injured because of the ship's unseaworthiness. This doctrine imposes an absolute, non-delegable duty. The Court pointed out that in *Italia Societa v. Oregon Stevedoring Co.,* 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964), the Supreme Court wrote:

"Where the shipowner is liable to the employees of the stevedore company as well as its employees for failing to supply a vessel and equipment free of defects, regardless of negligence, we do not think it unfair or unwise to require the stevedore to indemnify the shipowner for damages sustained as a result of injury-producing defective equipment supplied by a stevedore in furtherance of its contractual obligations." 376 U.S. at 324, 84 S.Ct. at 754, 11 L.Ed.2d at 740.

The Court of Appeals went on to conclude that because the unique circumstances applicable in the admiralty situation were not present in *Liberty Mutual,* it did not think a *Ryan*-like warranty could be created in the case.

Heede reads the *Liberty Mutual* decision as holding that non-admiralty application of *Ryan* would not be appropriate in the absence of an absolute, non-delegable duty on the part of the indemnity plaintiff to satisfy a judgment whether or not the said plaintiff's negligence caused the injuries. In this regard Heede points out that in addition to being charged with negligence it has also been charged with manufacturing and selling the tower crane in a defective condition unreasonably dangerous to the plaintiffs and their decedents, which defective condition proximately caused the accident in question. In other words, Heede has also been sued under what is commonly known as the theory of "strict liability". It is Heede's position that the "strict liability" of Heede in the present case is analogous to the absolute, non-delegable duty of the shipowner in *Ryan.* Therefore, Heede argues that *Ryan* should be applied in this non-admiralty case.

■ If TVA had agreed to aid in the manufacturing of the tower crane, and if

**2.** The dissent, written by Justice Black, expresses concern that the *Ryan* holding circumvents the intended purpose of the exclusive remedy provision of the Longshoremen's and Harbor Worker's Compensation Act. Noting that the stevedoring company in *Ryan* would have to pay at least $60,000 more than it would otherwise have been required to pay under the Longshoremen's Act, the dissent stated:

"Whether called 'common-law indemnity,' 'contribution', 'subrogation', or any other name, the result is precisely the same. The employer has to pay more 'on account of' an injury to his employee than Congress said he should." 350 U.S. at 141, 76 S.Ct. at 241, 100 L.Ed. at 145.

unreasonably dangerous defects in the tower crane had subsequently caused injury, and if TVA were responsible for these defects, then perhaps the analogy which Heede seeks to draw between a manufacturer's "strict liability" for product defects and the shipowner's absolute liability for the unseaworthiness of its vessel would apply. However, unlike the agreement between the stevedoring company and shipowner in *Ryan*, TVA did not agree to perform services for the benefit of Heede for which Heede would have otherwise been held absolutely responsible. TVA had nothing to do with the manufacturing of the tower crane and therefore could not be held responsible for product or design defects found therein. This is in contrast to the situation in *Ryan* where the stevedoring company was directly responsible for the unseaworthiness of the shipowner's vessel.

In sum, the Court is of the opinion that the *Ryan* doctrine would not apply in this non-admiralty context. Just as the Sixth Circuit noted in *Liberty Mutual,* the unique circumstances applicable in the admiralty situation are not present here. *See also Smith Petroleum Service, Inc. v. Monsanto Chemical Company, supra; Schwartz v. Compagnie General Transatlantique, supra.*

Next the Court considers Heede's argument that TVA through the conduct of its General Counsel waived its immunity from suit. Heede asserts that regardless of the exclusive remedy provision of the FECA, TVA has consented to be sued and waived its potential immunity from suit by making direct quotations in a letter by TVA's General Counsel of DR 7–104 of the American Bar Association's Code of Professional Responsibility. This letter, a copy of which is attached to Heede's third-party complaints, reads as follows:

"We understand that on July 13, 1977, you telephoned Charles Morgan of TVA's Division of Construction and interrogated him concerning the above accident. We thought we had made it clear that TVA considered its interests to be adverse to Heede's in this matter and that we were unwilling for you to communicate directly with our client or its employees. In this connection we refer you to section DR 7–104 of the ABA's Code of Professional Responsibility which specifically prohibits an attorney from communicating 'on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party.' By this letter we are specifically asking you not to communicate directly with our client or its employees. Any further requests or inquiries you may have concerning this matter should be directed to M. Elizabeth Culbreth of TVA's Division of Law."

■ The mere fact that DR 7–104 of the ABA's Code of Professional Responsibility refers to a "party" would not appear to the Court to evidence a waiver by TVA of its immunity from suit. There is no indication in the above letter that TVA claimed to be a defendant in this action or that TVA was voluntarily and intentionally waiving its immunity from suit. The Court is accordingly of the opinion that Heede's waiver argument is without merit.

■ Similarly, the Court finds no merit in Heede's claim that TVA's motion to dismiss should be denied on the grounds that TVA is a necessary and indispensable party to this litigation. Heede appears to argue that since TVA may have a property damage claim against Heede arising out of the tower crane accident here involved, the Court should therefore deny TVA's motion to dismiss. However, whether or not TVA may have a property damage claim against Heede would appear to the Court to be of no relevance to the issue of whether or not the third-party complaint against TVA can be maintained.

Accordingly, for the reasons heretofore stated the Court is of the opinion that Heede would be barred from maintaining its third-party action against TVA by reason of the Federal Employee's Compensation Act, 5 U.S.C. § 8116(c). An order will therefore enter dismissing Heede's third-party complaint against TVA.