PORT AUTHORITY OF NEW YORK AND NEW JERSEY, PLAINTIFF-APPELLANT, v. HONEYWELL PROTECTIVE SERVICES, HONEYWELL, INC., DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 14, 1987—Decided October 16, 1987.

446

448

Before Judges DREIER and BAIME.

*Donald F. Burke* argued the cause for appellant (*Hugh H. Welsh*, attorney; *Donald F. Burke*, on the brief).

*William P. Ries* argued the cause for respondent (*Purcell, Ries, Shannon & Mulcahy*, attorneys; *William P. Ries*, on the brief).

The opinion of the court was delivered by

BAIME, J.A.D.

Plaintiff Port Authority of New York and New Jersey (Port Authority) appeals from a summary judgment entered by the Superior Court, Law Division, in favor of defendant Honeywell Protective Services, Honeywell, Inc. (Honeywell). Port Authority also appeals from the trial judge's denial of its motion for summary judgment. In a prior action, Honeywell's employee sued Port Authority for personal injuries sustained while servicing a fire alarm system on the latter's property. Port Authority then instituted this action to recover damages based on Honeywell's alleged breach of its contractual obligation to protect the safety of its employees and others in the course of servicing and maintaining the fire alarm. The judge determined that Port Authority's claim was barred by the exclusive-remedy provision of the Workers' Compensation Act (*N.J.S.A.* 34:15-1 *et seq.*). We disagree and are constrained to reverse

the summary judgment. Because we are of the view that genuine issues of material fact exist, we find that a plenary trial is necessary and we remand for that purpose.

The salient facts can be summarized briefly. John Nielsen, an employee of Honeywell, sustained injuries to his knee while attempting to service a fire alarm in a warehouse owned by Port Authority and leased to William Spencer Company. While the meager record is not wholly informative, it would appear that when the incident occurred Nielsen was attempting to reach a telephone circuit to which the fire alarm was connected by wires. The circuit was located approximately five feet above the roof of an enclosed office within the warehouse. Nielsen testified in a deposition that he was not equipped with a ladder and therefore found it necessary to climb up the outside wall of the office. When he attempted to step on the roof, Nielsen's foot went through a hole.

Following the accident, Nielsen instituted a personal injury action against Port Authority and William Spencer Company, alleging negligence in the maintenance of the building. Port Authority then commenced this action for breach of its fire alarm contract with Honeywell and sought to consolidate it with Nielsen's lawsuit. The trial judge denied the motion for consolidation. Nielsen's action was thereafter settled for $120,-000, of which Port Authority paid $25,000.

Port Authority's claim against Honeywell is predicated upon the allegation that Honeywell breached its contractual obligation to protect the safety of its employees while installing and maintaining the fire alarm system. The alarm system was originally installed by Honeywell's predecessor, Central Office Alarm Company, in 1965 in accordance with a written contract between it and Port Authority.[1] The contract, which is self-renewing and was thus in effect when Nielsen was injured,

---

[1] Central Office Alarm Company was subsequently purchased by Mutual Central Alarm Co. which, in turn, was later taken over by Honeywell.

requires Honeywell "in the performance of [the] work" to "exercise every precaution to prevent injury to persons" and "to design and erect such barricades, ladders, scaffolding, fences and railings ... as may be necessary, desirable or proper...." The contract defines the word "work" as including the "supplying, installing and maintaining ... of [the] fire alarm equipment and [the] supervisory systems ... required by the specifications...." Port Authority contended, and continues to assert, that Honeywell failed to fulfill its contractual promise to protect the safety of its employees and to provide safeguards to prevent injury to persons on the premises.

In granting Honeywell's motion for summary judgment, the trial judge found, as a matter of law, that Port Authority's claim was barred by the exclusive-remedy section of the Workers' Compensation Act, *N.J.S.A.* 34:15–8. The judge reasoned that the statutory bar precluded a claim for contribution, that there was no express indemnification agreement calling upon Honeywell to hold Port Authority harmless for damages resulting from tort liability and that there was no special relationship between the parties upon which an implied indemnification obligation could be posited. Judgment was entered accordingly.

I.

■ We are convinced that the trial judge erred. The triadic relationship between the employer, employee and the third-party tortfeasor is governed by the Workers' Compensation Act. Under the Act, the employer "renders itself absolutely liable for the scheduled and fixed compensation to the injured party regardless of the absence of fault on its part or the contributory negligence of the employee." *Schweitzer v. Elox Div. of Colt Industries,* 70 *N.J.* 280, 287 (1976). Acceptance by the employee of the benefits provided by the Act's schedule of payments constitutes agreement to forsake a tort action against the employer. *Ramos v. Browning Ferris Industries,*

103 *N.J.* 177, 183 (1986), citing *Morris v. Hermann Forwarding Co.,* 18 *N.J.* 195, 197–198 (1955). The employee may nevertheless seek damages from a contributing tortfeasor, but he may not duplicate these recoveries. *Schweitzer v. Elox Div. of Colt Industries, supra,* 70 *N.J.* at 287. With respect to a claim by an employee against a third party, the Act is neutral, "leaving him with his common-law liability to the injured employee, or, if the latter has been recompensed therefor to any extent by compensation payments, to the statutorily subrogated employer...." *Id.* at 287–288. The implicit legislative determination is that the employer's negligence, if any, shall not affect the liability relationship of the parties. This is consonant with the overall legislative policy that "negligence, whether of the employer or the employee, shall play no part in the administration of the [W]ork[ers]' [C]ompensation Act or in the incidence or amount of employer liability." *Id.* at 288.

A corollary to this fundamental policy is that because the employer is removed from tort liability, it is not subject to the provisions of the Joint Tortfeasors Contribution Law (*N.J.S.A.* 2A:53A-1 *et seq.*). Thus, a "third-party tortfeasor may not obtain contribution from an employer, no matter what may be the comparative negligence of the third party and the employer." *Ramos v. Browning Ferris Industries, supra,* 103 *N.J.* at 184. The exclusive-remedy provision precludes a claim for contribution against an employer whose concurring negligence contributed to the injury of an employee. *Id.* at 185. *See also Farren v. N.J. Turnpike Authority,* 31 *N.J. Super.* 356, 360–361 (App.Div.1954); *Arcell v. Ashland Chemical Co. Inc.,* 152 *N.J. Super.* 471, 483–485 (Law Div.1977); *Ruvolo v. U.S. Steel Corp.,* 139 *N.J. Super.* 578, 583 (Law Div.1976); *Yearicks v. City of Wildwood,* 23 *N.J. Super.* 379, 382–383 (Law Div.1952).

Although a third-party tortfeasor cannot seek contribution from an employer, it may obtain indemnification where that course is specifically permitted by way of an express contract. The Act does not preclude the employer's assumption of a contractual duty to indemnify a third party through an express

agreement. *Ramos v. Browning Ferris Industries, supra,* 103 *N.J.* at 191. Strong public policy considerations along with the general rules governing the construction of contracts dictate that when the meaning of the indemnification clause is ambiguous, it should be strictly construed against the indemnitee. *Ibid.* Thus, "a contract will not be construed to indemnify the indemnitee against losses resulting from its own negligence unless such an intention is expressed in unequivocal terms." *Ibid. See also Carbone, et al. v. Cortlandt Realty Corp.,* 58 *N.J.* 366, 368 (1971); *George M. Brewster & Son v. Catalytic Const. Co.,* 17 *N.J.* 20, 33 (1954); *Cozzi v. Owens Corning Fiber Glass Corp.,* 63 *N.J. Super.* 117, 121 (App.Div.1960). Subject to this principle, the parties to a contract can generally allocate the burden of risk as to potential tort liability in any manner they may choose.

Apart from express indemnification agreements, it has also been held that a third-party may seek recourse against an employer under the theory of implied indemnification. *Ramos v. Browning Ferris Industries, supra,* 103 *N.J.* at 188–189. The contours of the doctrine are somewhat narrow, however. "As a general rule, a third party may recover on a theory of implied indemnity from an employer only when a special legal relationship exists between the employer and the third party, and the liability of the third party is vicarious." *Id.* at 189. *See also Hagen v. Koerner,* 64 *N.J. Super.* 580, 586–587 (App.Div.1960). *Cf. Adler's Quality Bakery, Inc. v. Gaseteria, Inc.,* 32 *N.J.* 55, 79–81 (1960). A right of implied indemnity may be created as an equitable remedy "to prevent a result which is regarded as unjust or unsatisfactory." *Prosser & Keeton on Torts* (5 ed. 1984), § 51 at 341. In that context, it has been said that "[o]rdinarily, a party who is at fault may not obtain indemnification for its own acts." *Ramos v. Browning Ferris Industries, supra,* 103 *N.J.* at 190. The indemnitee "must have been without fault and his liability must be merely constructive, secondary or vicarious in order to make a claim for indemnification." *New Milford Bd. of Ed. v. Juliano,* 219 *N.J. Super.* 182,

186 (App.Div.1987). *See also Stephenson v. R.A. Jones & Co.,*
103 *N.J.* 194, 199 (1986); *Cartel Capital Corp. v. Fireco of New
Jersey,* 81 *N.J.* 548, 566 (1980); *Adler's Quality Bakery, Inc. v.
Gaseteria, Inc., supra,* 32 *N.J.* at 79–80; *Daily v. Somberg,* 28
*N.J.* 372, 385 (1958); *Restatement, Restitution* § 96, at 418
(1937).

## II.

■■■■ Application of these principles here presents substan-
tial problems because of the paltry and largely uninformative
record. Initially, we are in complete accord with the trial
judge's determination that Port Authority cannot recover dam-
ages against Honeywell based upon a claim of contribution
under the Joint Tortfeasors Contribution Law. We also agree
that the contract between Port Authority and Honeywell does
not expressly require indemnification. It does not purport to
hold Port Authority harmless in the event of claims of third
persons injured during the installation or maintenance of the
fire alarm system. The trial judge's findings in these respects ·
cannot fairly be assailed.

More troublesome is the judge's determination that Port
Authority cannot recover under an implied indemnification theo-
ry. A cogent argument can be made that the contract between
Port Authority and Honeywell created a special relationship
between the two, that Port Authority was wholly free of
individual fault and that its liability to Nielsen was purely
vicarious.

■■■■ In that connection, we note that "an owner of a
building has a nondelegable duty to exercise reasonable care
for the safety of ... persons using the premises at his invita-
tion." *De Los Santos v. Saddlehill, Inc.,* 211 *N.J. Super.* 253,
261 (App.Div.1986). *See also Mayer v. Fairlawn Jewish Cen-
ter,* 38 *N.J.* 549, 555 (1962); *Gill v. Krassner,* 11 *N.J. Super.*
10, 14–15 (App.Div.1950). If, while repairs or structural altera-
tions are taking place, a dangerous condition is created which

results in injury to an invitee, the owner is liable for damages. *Mayer v. Fairlawn Jewish Center, supra,* 38 *N.J.* at 555. In that respect, it is immaterial whether the construction work was performed by the owner's own employee or by an independent contractor. *Gill v. Krassner, supra,* 11 *N.J. Super.* at 15. The owner must nevertheless respond in damages to the injured person. *Ibid.*

In a series of decisions, we have held that "ordinarily a landowner owes a duty to employees of an independent contractor who comes upon the property to provide those employees with a reasonably safe place to work." *Izhaky v. Jamesway Corp.,* 195 *N.J. Super.* 103, 106 (App.Div.1984). It has thus been said that a landowner "is under a duty to exercise reasonable care to render the work site reasonably safe for the employee of an independent contractor who comes upon those premises for the purpose of performing work thereon, and this duty is nondelegable." *Rodrigues v. Elizabethtown Gas Co.,* 104 *N.J. Super.* 436, 442 (App.Div.1969). The duty to provide a reasonably safe workplace "is relative to the nature of the invited endeavor and does not entail the elimination of potential operational hazards which are obvious and visible to the invitee upon ordinary observation." *Wolczak v. National Electric Products Corp.,* 66 *N.J. Super.* 64, 75 (App. Div.1961). So too, when a party engages an independent contractor to carry on an activity which by its very nature involves a peculiar or high risk of harm to the contractor's employee, the landowner is generally not responsible for injuries sustained by the contractor's employee in the course of his assigned duties. *See, e.g., Majestic Realty Associates, Inc. v. Toti Contracting Co.,* 30 *N.J.* 425, 436 (1959); *Donch v. Delta Inspection Services, Inc.,* 165 *N.J. Super.* 567, 575 (Law Div.1979).

In the context of this case, therefore, Port Authority could be found liable to Nielsen either because (1) it was independently negligent since it failed to maintain the roof of the office in a proper condition and it was reasonably foreseea-

ble that persons on the property might be injured thereby, (2) Honeywell violated Port Authority's nondelegable duty to invitees and Port Authority's liability is thus purely vicarious, or (3) the injuries were sustained because of a combination of Port Authority's independent negligence and Honeywell's breach of its duty. It follows from what has been said thus far that Port Authority can recover damages from Honeywell under the theory of implied indemnification only if its liability to Nielsen is purely vicarious. Stated somewhat differently, since implied indemnification may be permitted only where the indemnitee is without fault, see *Cartel Capital Corp. v. Fireco of New Jersey, supra,* 81 *N.J.* at 566, Port Authority cannot recover under that theory if either Nielsen's injuries were caused solely by Port Authority's negligence or such injuries were the result of the concurrent negligence of both Port Authority and Honeywell. *See Stephenson v. R.A. Jones & Co., supra,* 103 *N.J.* at 200–201. Cf. *Mayer v. Fairlawn Jewish Center, supra,* 38 *N.J.* at 562–565. In any event, we conclude that the trial judge erred in his determination that Port Authority cannot under any circumstances recover on an implied indemnification theory.

## III.

Even without regard to the theory of implied indemnification, there is a potential contractual basis for a jury to find liability on the part of Honeywell. Perhaps cognizant of Port Authority's exposure to invitees resulting from its nondelegable duty to exercise reasonable care for the safety of persons using its warehouse, the contract expressly required Honeywell to "exercise every precaution to prevent injury to [such] persons...." As we have noted previously, the contractual undertaking specifically imposed the duty on Honeywell "to design and erect such barricades, ladders, scaffolding, fences and railings as may be necessary, desirable or proper." We find no merit in Honeywell's assertion that this clause pertained only to the installation of the fire alarm system and not to its maintenance. We point out that Honeywell's contractual promise

related to its "performance of the work." We have alluded previously to the fact that the word "work" is defined in the contract as encompassing both the installation and the maintenance of the fire alarm system. We are fully convinced that Honeywell's duty to safeguard persons on the premises from dangerous conditions caused by its work did not terminate after the fire alarm was installed, but rather continued and applied to its maintenance responsibilities as well.

Our research discloses ample support for the conclusion that Port Authority can recover damages from Honeywell based upon the latter's alleged breach of contract. In *Ryan Stevedoring Company v. Pan-Atlantic Steamship Corp.*, 350 *U.S.* 124, 76 *S.Ct.* 232, 100 *L.Ed.* 133 (1956), an employee of a stevedoring contractor instituted an action to recover from a shipowner damages for personal injuries sustained while unloading the ship's cargo. The shipowner filed a third-party complaint against the stevedoring contractor. The District Court allowed recovery against the shipowner but dismissed the third-party complaint on the basis that the Longshoremen's and Harbor Workers' Compensation Act (33 *U.S.C.* § 901 et seq.), which, like our Workers' Compensation Act, permits an employee to recover damages in accordance with a fixed schedule regardless of fault, provided the exclusive remedy for work-related injuries. The Court of Appeals affirmed the judgment in favor of the injured employee, but reversed the dismissal of the third-party complaint. The United States Supreme Court held that the shipowner could recover damages from the stevedoring contractor for breach of contract. 350 *U.S.* at 133–134, 76 *S.Ct.* at 237–38, 100 *L.Ed.* at 142. The Court emphasized that the shipowner's claim was not one for contribution from a joint tortfeasor. 350 *U.S.* at 133, 76 *S.Ct.* at 237, 100 *L.Ed.* at 141. Rather, the predicate of the shipowner's action was said to be the stevedoring contractor's breach of its contractual undertaking to stow the cargo in a safe fashion. 350 *U.S.* at 133–134, 76 *S.Ct.* at 237–38, 100 *L.Ed.* at 142. The exclusive-remedy provi-

sion was found not to bar the shipowner's contract action against the stevedoring contractor.

In *Weyerhaeuser Steamship Co. v. Nacirema Operating Co. Inc.*, 355 *U.S.* 563, 78 *S.Ct.* 438, 2 *L.Ed.*2d 491 (1958), an employee of Nacirema, a stevedoring contractor, was injured while unloading Weyerhaeuser's ship. The injured employee sued Weyerhaeuser, alleging negligence. Weyerhaeuser impleaded Nacirema, charging breach of the stevedoring contract. The District Court dismissed the third-party complaint. The United States Supreme Court reversed on the basis that Nacirema could be found answerable for the damages recovered by its employee from Weyerhaeuser based upon its breach of the stevedoring contract. As in *Ryan*, the exclusive-remedy provision was held not to be a barrier to such a suit. 355 *U.S.* at 565, 78 *S.Ct.* at 441–442, 2 *L.Ed.*2d at 493–494. *Cf. Lockheed Aircraft Corp. v. United States et al.*, 460 *U.S.* 190, 103 *S.Ct.* 1033, 74 *L.Ed.*2d 911 (1983).

Although other jurisdictions have not universally adopted the principles established in *Ryan* and *Weyerhaeuser*,[2] two report-

---

[2]*Compare Wilken v. International Harvester Co.*, 701 *F.*2d 730 (8th Cir.1983); *Christie v. Ethyl Corp.*, 715 *F.*2d 203 (5th Cir.1983); *Vickery v. Reliable Elec. Co.*, 703 *F.*2d 488 (10th Cir.1983); *Mo. Public Service Co. v. Henningsen Steel*, 612 *F.*2d 363 (8th Cir.1980); *General Electric Co. v. Cuban American Nickel Co.*, 396 *F.*2d 89 (5th Cir.1968); *Central Stikstof Verkoopkanter, N.V. v. Walsh Steve. Co.*, 380 *F.*2d 523 (5th Cir.1967); *Hammond v. Kolberg*, 542 *F.Supp.* 662 (D.Colo. 1982); *Lockhart v. Heede Intern., Inc.*, 445 *F.Supp.* 28 (E.D.Tenn.1977); *Burrell v. Rodgers*, 441 *F.Supp.* 275 (W.D.Okla.1977); *Coleman v. General Motors Corp.*, 386 *F.Supp.* 87 (N.D.Ga.1974); *O'Steen v. Lockheed Aircraft*, 294 *F.Supp.* 409 (N.D.Ga.1968); *Trammel v. Appalachia Electric Cooperative*, 135 *F.Supp.* 512 (E.D.Tenn.1955); *Holly Sugar Corp. v. Union Supply Co.*, 194 *Colo.* 316, 572 *P.*2d 148 (1977); *Hilzer v. MacDonald*, 169 *Colo.* 230, 454 *P.*2d 928 (1969); *Houdaille Industries, Inc. v. Edwards*, 374 *So.*2d 490 (Fla.1979); *Central of Georgia Railway Company v. Lester*, 118 *Ga.App.* 794, 165 *S.E.*2d 587 (1968); *American Radiator & Stand. San. Corp. v. Mark Eng. Co.*, 230 *Md.* 584, 187 *A.*2d 864 (1963); *Diekevers v. Brekel Inc.*, 73 *Mich.App.* 78, 250 *N.W.*2d 548 (1976); *Linsin v. Citizens Elec. Co.*, 622 *S.W.*2d 277 (Mo.App.1981); *Outboard Marine Corp. v. Schupach*, 93 *Nev.* 158, 561 *P.*2d 450 (1977); *Royal Indem. Co. v. Southern Cal. Petroleum Corp.*, 67 *N.M.* 137, 353 *P.*2d 358 (1960); *Sayler v.*

ed New Jersey opinions have taken that course. In *Mayer v. Fairlawn Jewish Center, supra,* and *Rommell v. U.S. Steel Corp.,* 66 *N.J. Super.* 30 (App.Div.1961), certif. den. 34 *N.J.* 580 (1961), contractual provisions similar to that present here were held to be a proper basis for a suit against a contractor by a contractee who had been found liable for personal injuries sustained by an invitee.

Although *Mayer* did not involve an injury sustained by a contractor's employee and thus the exclusive-remedy provision of the Workers' Compensation Act was not implicated, the holding of our Supreme Court is nonetheless relevant. There, the Court stated that "where such an agreement exists, failure of the contractor to exercise due care in the performance of the work which causes injury to a third person, constitutes a breach of it." *Mayer v. Fairlawn Jewish Center, supra,* 38 *N.J.* at 556. The Court went on to note that "[i]f the injured person subsequently receives a damage judgment against his invitor (the contractee) based wholly upon the contractor's negligence, the judgment must be deemed to arise from the breach of the assumption clause of the contract." *Ibid.*

In *Rommell,* we were confronted with a factual pattern strikingly similar to that present here. Rommell was injured while working for Commercial Contracting Corporation (Commercial) on property owned by U.S. Steel Corp. (Steel). There was evidence in the case that Commercial had agreed in its contract with Steel that the safety of all persons employed by

*Holstrom,* 239 *N.W.2d* 276 (N.D.1976); *Madsen, Inc. v. Babler Bros., Inc.,* 25 *Wash.App.* 880, 610 *P.2d* 958 (1980); *Montoya v. Greenway Aluminum Company, Inc.,* 10 *Wash.App.* 630, 519 *P.2d* 22 (1974) *with Heckart v. Viking Exploration, Inc.,* 673 *F.2d* 309 (10th Cir.1982); *Forward v. Cotton Petroleum Corp.,* 540 *F.Supp.* 122 (D.Colo.1982); *Croxen v. U.S. Chemical Corp. of Wisconsin,* 558 *F.Supp.* 6 (N.D.Iowa 1982); *Weggen v. Elwell-Parker Elec. Co.,* 510 *F.Supp.* 252 (S.D.Iowa 1981); *Harn v. Standard Engineering Co.,* 416 *F.Supp.* 1168 (D.S.D. 1976); *Blackford v. Sioux City Dressed Pork, Inc.,* 254 *Iowa* 845, 118 *N.W.2d* 559 (1962); *Whittenberg Eng. & Const. Co. v. Liberty Mut. Ins. Co.,* 390 *S.W.2d* 877 (Ky.App.1965); *Pan American Petroleum v. Maddux Well Service,* 586 *P.2d* 1220 (Wyo.1978).

Commercial on Steel's premises would be solely its responsibility and that it would take all measures and precautions to prevent injuries at the site. The trial judge dismissed Steel's third-party suit against Commercial without any submission thereof to the jury. On appeal, we held that the contractual provision did not constitute a covenant, express or implied, by Commercial to indemnify Steel. *Rommell v. U.S. Steel Corp.*, *supra*, 66 *N.J. Super.* at 42. However, we determined that Commercial could be found liable to Steel based upon its alleged breach of the contract. *Id.* at 41–42.

In our view, these principles apply with equal force here. We are convinced that a rule allowing a third party to recover damages from an employer based upon the employer's breach of its agreement to safeguard its employees from harm during the performance of the contract does no violence to the policy and purposes of the Workers' Compensation Act. The object of the exclusive-remedy provision is in no sense subverted by such an action.

■■■■ We emphasize the limited parameters of our holding, however. We do not hold that every contract contains an implied promise by the contractor to perform the work in such a way as to protect its employees from harm, thereby subjecting it to liability to the contractee whenever an employee is injured. To the extent that the United States Supreme Court's decisions in *Ryan* and *Weyerhaeuser* can be so construed, we disagree. Here, however, as in *Mayer* and *Rommell*, the contractor's responsibility to safeguard invitees from the peril of the dangerous condition it creates is express and manifest. Under such circumstances, we perceive no justifiable basis to bar the contractee from seeking damages premised upon the contractor's breach of contract.[3]

---

[3]The measure of damages is such as "to put the injured party in as good a position as he would have had if performance had been rendered as promised." 5 *Corbin, Contracts*, § 992 at 5 (1951). *See also Donovan v. Bachstadt*, 91 *N.J.*

One further matter deserves attention. We note that our decision in *Rommell* preceded the opinion of our Supreme Court in *Mayer*. In *Rommell*, we held that the contractee's independent active negligence would not preclude it from seeking damages from the contractor based upon the extent of the latter's fault in causing the injuries sustained. *Id.* at 46. In that regard, we drew a distinction between the implied indemnification and breach of contract theories. *Id.* at 45–46. We stated that fault on the part of the indemnitee, which is not merely constructive, technical, imputed or vicarious, precludes recovery on an implied indemnification basis. *Id.* at 45. On the other hand, we said that active fault on the part of the contractee would not preclude it on a contract theory from recovering from the contractor that portion of the amount paid to the injured person commensurate with the contractor's fault. *Id.* at 47. In the context of that case, we noted "[w]hile appreciating that there may be some difficulty in separating the damages caused by Commercial's breach of contract from those caused by Steel's negligence, the mere difficulty should not prevent Steel from recovering for breach of contract." *Id.* at 47.

In *Mayer*, the Supreme Court held that if the contractee "is himself guilty of separate and independent active negligence which concurs with that of the contractor in producing the

---

434, 444 (1982). Where a breach of contract results in claims by third persons against the injured party, the party in breach "is liable for the amount of any judgment against the injured party together with his reasonable expenditures in the litigation," if such damages constituted a foreseeable and probable result of the breach when the contract was entered into by the parties. *Restatement, Contracts* 2d, § 351, Comment c. (1979). *Cf. The Penwag Property Co., Inc. v. Landau*, 76 *N.J.* 595, 598 (1978); *Gerhardt v. Continental Ins. Cos.*, 48 *N.J.* 291, 300 (1966); *Enright v. Lubow*, 202 *N.J. Super.* 58, 84–85 (App.Div.1985), certif. den. 104 *N.J.* 376 (1986); *Dorofee v. Pennsauken Tp. Planning Bd.*, 187 *N.J. Super.* 141, 144 (App.Div.1982). "In furtherance of the policy favoring private settlement of disputes, the injured party is also allowed to recover the reasonable amount of any settlement made to avoid litigation, together with the costs of the settlement." *Restatement, Contracts* 2d, § 351, Comment c. (1979).

invitee's injury, there can be no recovery *inter se* on the 'protection of work' clause in the contract." *Id.* 38 N.J. at 559–560. In that respect, the Court reasoned:

> The theme of the contract is that the contractor will not perform the construction work in such negligent fashion as to create dangerous conditions on the premises and thereby expose third persons to harm. Protection of such persons against independent negligent acts of commission of the contractee must be considered beyond the scope of that undertaking in the absence of language clearly establishing such a broad obligation.
>
> [*Id.* at 560 ; citations omitted].

To that extent, the Court noted that "[c]onceptually ... the breach of contract remedy ... bears a substantial resemblance to the principles underlying implied indemnity and restitution." *Id.* at 561.

The Court apparently adopted one exception to the rule that fault on the part of the contractee bars recovery against the contractor for breach of contract: where the contractor's fault consists only of *"secondary* negligence," that is, the failure to provide "some physical protection or warning in order to avoid injury to its invitees" once having gained actual or constructive notice of the dangerous condition caused by the contractor. *Id.* at 562–563. In other words, a contractor whose negligence consists solely of its failure to correct or warn of a dangerous condition caused by the contractee may nevertheless recover damages from the contractee.

Obviously, that portion of our holding in *Rommell* that active fault on the part of the contractee does not bar it from recovering breach of contract damages against the contractor cannot be reconciled with our Supreme Court's holding to the contrary in *Mayer*. The prevailing principle, therefore, that stated in *Mayer*, is that the contractee cannot recover damages against the contractor if the injuries sustained by the employee were in part caused by the contractee's active negligence.

## IV.

In sum, we conclude that Port Authority can recover damages from Honeywell either on an implied indemnification or

contract theory if it can establish that Nielsen's injuries were caused solely by Honeywell's negligence or breach of its contractual duty to protect invitees from dangerous conditions created by the maintenance of the alarm system. In order to succeed on either basis, Port Authority must prove that it was not actively at fault. As we have noted, the sketchy record is largely uninformative with respect to the issues presented and outlined in this opinion. Summary judgment was thus improvidently granted. Substantial factual issues exist which can be resolved only by way of a plenary trial.

Accordingly, the order granting Honeywell's motion for summary judgment is reversed and the matter is remanded for trial.